596 So.2d 252 (1992)
Edna Adler MOORE, Plaintiff-Appellant,
v.
Ottis Medford MOORE; Amoco Corporation, Defendant-Appellee.
No. 90-1033.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Ballay & Braud, Charles J. Ballay, Cynthia Davidson, Belle Chasse, Wm. J. Gearheard, Lafayette, for plaintiff-appellant.
Ottis M. Moore, in pr. per.
Joseph A. Koury, Samuel D. Abraham, Lafayette, for Ottis Moore.
Before GUIDRY, J., and CULPEPPER[*] and MARCANTEL*, JJ. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This case involves a divorced wife's claim to an interest in the husband's pension benefits. The trial court refused to apply the Sims v. Sims, 358 So.2d 919 (La.1978) formula and accepted instead the valuation by the husband's expert "pension consultant." The award to the wife is $15,805.62. The wife appeals.
The wife contends the Sims formula must be rigidly applied, resulting in an *253 award to her of $102,281.00. The husband contends that application of the Sims formula would result in injustice to him because his salary increased greatly between the time of termination of the community in 1974 and the time of his retirement in 1989.

FACTS
The facts were stipulated. Edna Adler Moore and Ottis Medford Moore married on June 3, 1955. He began employment with Amoco Corporation on October 8, 1963. The community of acquets and gains was terminated on June 5, 1974, on which date Edna filed a suit for separation, ending in a final divorce on April 15, 1976. At the time of the separation judgment a settlement of community was entered into, on June 21, 1974, which makes no mention of Ottis Moore's retirement program with Amoco.
When Ottis retired from Amoco in 1989, he received a lump settlement of his pension benefits totaling $483,512.00 less $17,871.00 withheld for taxes in his name. In order to protect Edna's interest, an injunction was issued on October 30, 1989 enjoining Ottis from disposing of twenty-five (25) percent of the retirement funds.

DISCUSSION OF ISSUES
In the district court Ottis contended that even though the Amoco pension is not expressly mentioned in the community settlement of June 21, 1974, it was understood by the parties that Edna waived her claim to the pension. On appeal, Ottis does not make this argument. We therefore consider it abandoned.
Edna contends the following Sims v. Sims, supra, formula must be rigidly applied:
Portion of pension
retirement attributable
to creditable service
during existence of
community
__________________________ × ½ × annuity or (lump-sum payment)
Pension retirement
attributable to total
creditable
service
Applying the formula to the present case she contends:
11 years community service × ½ × 483,512 = 102,281.
 26 years total service
Ottis introduced the deposition of Richard Fowler, a highly qualified expert pension consultant, whose valuation was adopted by the trial court. Fowler had examined the official text of the Amoco Retirement Plan, Employee Booklets explaining the plan and the various methods of calculating benefits giving the employee the right to choose the method most advantageous to him. He also reviewed Moore's historical salary and job information and his annual benefit statements. Also he studied the opinion in Sims v. Sims, supra.
Mr. Fowler explained at the outset that Moore had asked him to determine the value of the benefits at the time of the dissolution of the community in 1974, and to determine the value of that interest at the time of distribution in 1989. Also he was to analyze how the value of the benefits changed from the time of dissolution of the community to time of distribution.
Fowler testified at length, giving his calculations with explanatory graphs and charts. Essentially, he treated the interest of the wife in the pension benefits as frozen at the time of the termination of the community in 1974. He did not treat each spouse's interest in the pension benefits as *254 continuing undivided until the distribution in 1989. The result is that Edna did not receive the benefit of Ottis' salary increases after 1974. His average annual salary increased from $22,619.00 in 1974 to $108,207.00 in 1989. In discussing Sims v. Sims, Fowler opined it would be inequitable to allow Edna to receive the full benefit of Ottis' salary increases after 1974.
Unfortunately, neither counsel nor the trial court had the benefit of the recent decision in Hare v. Hodgins, 586 So.2d 118 (La.1991) rendered on September 9, 1991. That case is very similar to the present one and answers most of the difficult res nova questions with which the district judge and counsel have struggled.
The facts in Hare v. Hodgins, supra, are that the parties were married in 1951. The husband began employment with a life insurance company in 1956. The parties separated and the community terminated in 1975. In 1977 they partitioned some community assets but made no mention of the husband's pension benefits under his employer's plan. Final divorce was in 1978. The husband retired in 1988 and started drawing $4,037.00 per month in retirement benefits. The wife then filed suit for her share of the pension.
The trial court applied the Sims formula and awarded the wife a fixed fraction of all past and future monthly retirement payments. The husband appealed and the court of appeal reversed finding the wife entitled to only $15,219.00 based on the testimony of the husband's expert.
The Supreme Court granted the wife's writ and held:
"The appeals court erred in basing its distribution to the non-employee spouse upon a valuation of the pension right as of the termination of the community in 1975. Procedurally, a court partitioning community property is required to value the assets as of the time of trial on the merits. La.R.S. 9:2801(4)(a). Moreover, and perhaps more important, the appellate decision is in conflict with substantive law in several respects. The termination of the community does not have the effect of freezing the value of each spouse's undivided interest in the community assets. Each spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value. In the present case, because the pension right ascribable to the community was not partitioned prior to its maturity in 1988, each spouse is entitled to a distribution based on the actual value of the fully matured pension. Consequently, it is incorrect to base the 1988 partition on the much lower valuation as of 1975 when the pension right was subject to contingencies that might have prevented its maturity.
On the other hand, the trial court did not err or abuse its discretion by choosing a fixed percentage approach to partition the community interest in the pension right, but its application of that method, without any adjustment, may have overstated the part of the pension attributable to the community. If substantial post-community increases in the pension benefits were due to the employee spouse's individual meritorious efforts or achievement, and not related to prior contributions ascribable to the community, the percentage of the pension asset recognized as community property should be decreased accordingly."
The opinion then gives a comprehensive analysis of the issue, with exhaustive citation of authorities. Regarding the trial court's application of the Sims formula, the Supreme Court states:
"For all these reasons, the trial court concluded that the fixed percentage method was preferable to the husband's inequitable and legally incorrect approach. In the absence of an acceptable alternate proposal with supporting evidence, we find no abuse or error in the trial court's selection of the fixed percentage method as a basic approach to partition.
We disagree, however, with the trial court's conclusion that a partitioning court is bound to use the fixed percentage method in every case analogous to *255 Sims. In Sims this court required the trial court to apply a fixed percentage formula to determine the wife's interest in any retirement payments if and when they became due in the future. In doing so, however, we did not say that the fixed percentage method is the only technique that may be applied to divide pension benefits.
The Sims court added perhaps unnecessarily, that
[T]he community interest in the retirement plan has no immediate redeemable cash value. Until the employee is separated from the service, dies, retires or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account.
Sims v. Sims, supra at 923.
"In retrospect, the statement was unfortunate. If it was intended to signify that the employer could not be required to pay benefits until due under its contractual obligation, the statement was correct but ambiguous. But if it was meant to indicate that a pension right could not be valuated for purposes of voluntary or judicial partition prior to maturity the statement must be acknowledged as error."
As to the problem of salary increases after termination of the community, the Supreme Court says:
"In general, the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. For example, such an increase in benefits might occur where the employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service. Fondi v. Fondi, [106 Nev. 856, 802 P.2d 1264 (1990) ] supra; Gemma v. Gemma, [105 Nev. 458, 778 P.2d 429 (1989) ] supra. Such increases are not "acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" are not fairly ascribable to the community and should not be considered community property. La.Civ. Code art. 2338. On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain. See La.Civ.Code art. 2340; Distribution of Pensions, supra at 1015. Drawing the line in this manner is consistent with codal scheme for classification of property as community or separate, is fair, and is consistent with the reasonable expectations of the parties. The employee spouse should expect to profit individually from his extraordinary personal industry after divorce, and the nonemployee spouse is entitled to expect to share in the benefits earned by his or her investment in the community. Id.
When an employee spouse believes that the income he or she will receive on retirement contains a substantial increment ascribable to his or her personal effort or achievement after termination of the community, that spouse may request the court to adjust the community fraction to credit his or her separate property with that increment. Should the trial court agree that the pension was increased due to the employee spouse's personal effort or achievement, benefits may be reallocated using the highest income the employee spouse would have received under the normal course of events, including ordinary promotions and cost increases and gains due to non-personal factors. Because the employee spouse is generally in a position of superior knowledge and is attempting to prove the unusual or unlikely case, the *256 burden of going forward with evidence and of persuasion on this issue properly should be assigned to the employee spouse."
The court concluded a remand was necessary, stating:
"From the record presented for our review, we cannot determine which of the husband's post-community increases in compensation, if any, was due purely to his personal effort or skill and unrelated to the prior community earnings. Evidently, the trial court and the parties were under the impression that the opinion of this court in Sims v. Sims inflexibly required the application of the fixed percentage method along with the community fraction rule as its integral part in the present case without any adjustment or modification. Consequently, although the trial court and counsel expressed some concern about a possible inequitable distortion that might result from use of the formula, they did not pursue the potential inequity as a genuinely material issue.
Accordingly, we are unable to determine justly whether the partition effected by the trial court divided the community interest in the pension equally and in an equitable manner between the former spouses. Moreover, it would not be just or equitable for us to resolve the issue here by merely applying the burden of proof rule newly announced in the present case, without allowing the parties to litigate the issue. Very few other courts or writers have dealt with the problem, and the parties before us reasonably could have concluded that the Sims decision prevented the trial court from adopting any modification to remedy inequity produced by application of the community fraction."
For the same reasons stated by the Supreme Court, the present case must be remanded.
For the reasons assigned, the judgment appealed is reversed and set aside and this case is remanded to the trial court for further proceedings in accordance with law and the views expressed in Hare v. Hodgins, 586 So.2d 118 (La.1991). All costs of this appeal are assessed against the defendant-appellee.
REVERSED AND REMANDED.
NOTES
[*] Judge William A. Culpepper, Retired, and Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.