634 So.2d 1249 (1994)
Virginia C. McCOWN, Plaintiff-Appellee,
v.
John A. McCOWN, Defendant-Appellant.
No. 93-899.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1250 Nathan A. Cormie, Lake Charles, for Virginia C. McCown.
Edward Dale McCown, Iowa, for John A. McCown.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
THIBODEAUX, Judge.
The issue before us concerns the determination of a divorced wife's interest in her former husband's pension rights, insofar as they are attributable to his employment during the existence of the community. The trial court applied the Sims v. Sims, 358 So.2d 919 (La.1978) formula. The formula is based on a fraction arrived at by dividing the length of time worked under the plan during the marriage by the total length of time worked toward earning the pension. This fraction is then multiplied by one half and then multiplied by the amount of the annuity or lump sum payment. Using the above formula, the trial court awarded $236.35 per *1251 month to the ex-wife, retroactive to February 1, 1992. The husband appeals. We affirm.
The husband contends the Sims formula should not have been applied in this case because there was a substantial post-community increase in his pension plan due to his personal effort. The wife contends that application of the Sims formula was correct because the increase was due merely to his continued employment rather than his personal efforts.
Further, the husband contends that because a temporary restraining order (TRO) was wrongfully issued which prevented the employer from distributing any pension funds until a Qualified Domestic Relations Order was prepared, the trial judge erred in refusing to dissolve it. On the other hand, the wife contends that the seizure was not wrongful because she remained a co-owner of the retirement benefits and that the prohibition against seizure of retirement benefits applies to third parties. The wife further contends that there is no appeal from an order relating to a TRO and, moreover, her attorney voluntarily dismissed the TRO during the same month in which it was issued. Consequently, no damage was done to her ex-husband because the employer did not withhold any payments.

FACTS
Virginia C. McCown and John A. McCown were married on January 20, 1945. John began his employment with Olin Corporation on September 30, 1946. Virginia filed suit seeking a separation on April 6, 1973; thus, the community of acquets and gains lasted for twenty-eight years and three months. On February 26, 1985, John went on long-term disability. After reaching the age of 65 on January 24, 1992, John officially retired from his employment on January 31, 1992. He was declared eligible for retirement benefits on February 1, 1992, which were figured through February 26, 1985, the beginning of John's long-term disability. Therefore, John worked for Olin for approximately thirty-nine years and four months. John is paid $684.67 per month from the retirement fund and will receive this monthly amount for the rest of his life.
Employees of Olin do not contribute monetarily to the retirement plan; thus, the entire cost of the pension plan is paid by Olin. The retirement benefits do not earn interest nor is there a cost of living allowance. The amount of retirement benefits available to a vested employee is frozen as of the last day that an employee works on a full time basis regardless of how much time has elapsed between the employee's last day as a full time worker and his retirement age. Retirement benefits are calculated by using an employee's benefit rate, which is negotiated by the union with Olin, benefit service, and pension group. The benefit rate is fixed as of the date of an employee's termination of employment with Olin; thus, whatever rate was in effect at the time of termination is the rate used to calculate his pension benefit. Continuation of work for Olin as a full time employee is the only way that the benefit rate and service increase and thereby elevate the amount available to an employee upon his retirement.

LAW AND DISCUSSION
The Louisiana Supreme Court in Sims v. Sims, 358 So.2d 919 (La.1978) held that a spouse's right to receive an annuity, lump-sum benefit or other benefits payable by a retirement plan is, to the extent that it is attributable to his employment during the existence of the community property regime, a community asset. Further, the Sims court held that the wife was entitled to have presently recognized her interest in the pension funds or rights, when they became actually payable to or for the husband, in the proportion that they were attributable to the husband's employment during the community. The community interest that the wife has stems not only from contributions made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community whether based on the community's contributions or not. Sims, supra at 921. Thus, the Sims decision makes it clear that regardless of the fact that John, in the present case, did not make monetary contributions to his pension funds during his marriage to Virginia, Virginia is entitled to her share of the pension *1252 fund because the right to share in the retirement plan is a community asset that over the years has increased in value. In this case, the retirement fund was never valuated and partitioned when the community was dissolved. See, T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Also, in Hare v. Hodgins, 586 So.2d 118 (La.1991), the supreme court recites the rationale for allowing the ex-wife to share in the increased value of a pension fund as:
"[T]he services rendered by the nonemployee spouse to the community during the early, low paid years of the employee spouse's employment provide the foundation for the post-divorce escalation of pension benefits and thereby justify applying the community fraction to the entire pension benefit including any increases after divorce."
Hare, supra at 127. Therefore, John's argument that since community funds were not contributed to the pension plan during the "early community," the value of the plan had not appreciated is without merit. During those early years, Virginia most certainly rendered services to the household which allowed John to be employed at Olin. To again quote the supreme court in Hare, "a brick at the bottom of a wall may be more important to its stability than quite a few near the top." Id.
John claims that the increase in the value of the pension fund was due to his personal efforts. Hare does allow deviation from use of the Sims formula in calculating the ex-wife's share of her ex-husband's pension fund when the pension funds show a substantial increase due to the personal efforts of the employed spouse. This court decided in Moore v. Moore, 596 So.2d 252 (La.App. 3d Cir.1992), that the Sims formula should not be rigidly applied. Thus, we agree with John that in some cases it is not proper to apply the Sims formula when partitioning pension benefits of the ex-spouse. In the present case, as in Moore, the pension benefits were not given a value and partitioned upon termination of the community property regime. Similar to the situation in the Hare case, there is a community asset which increased in value post-community which John and Virginia failed to partition.
The trial judge in this case applied the Sims formula and awarded Virginia $236.35 per month of all past and future monthly retirement payments. Although, as John contends, the trial judge may deviate from the rigid application of the Sims formula, it is only possible when a specific set of factual circumstances exists. Obviously, the trial judge found that those circumstances were not present in the instant case. We agree.
John claims that because of his continued active post-community employment, because it was he who reported to work everyday and faced the dangers inherent in working in a chemical and industrial environment, because he made the concerted effort to continue this work, then any increase in his pension fund was totally due to his personal effort. We disagree.
In some cases, the mechanical application of the community fraction in calculating the community's portion of the pension benefits will not lead automatically to a correct or equitable result. Hare, supra at 127. Thus, it is clear that to avoid an injustice to the employee spouse, the trial judge may use another method of partitioning the pension plan community asset when; "the employee spouse believes that the income he or she will receive on retirement contains a substantial increment ascribable to his or her personal effort or achievement ..." Hare, supra at 128.
Personal achievements warranting deviation from use of the Sims formula which cause an increase in benefits might occur where the:
"... employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service ... Such increases are not `acquired during the existence of the legal regime through the effort, skill, or industry of either spouse' are not fairly ascribable to the community and should not be considered community property." *1253 Moore, supra at 255. The pension fund increases that would be ascribable to the community and considered a community asset are non-personal elements such as:
"longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns."
Id.
Since John believes that the income he will receive on retirement contains a substantial increment ascribable to his personal effort or achievement after termination of the community, he has the burden to prove that an increase in the value of his pension benefits was due to his personal, post-community achievements. Hare, supra. The supreme court further mandates that in cases of doubt, the doubt should be resolved in favor of the community and against the employee spouse's separate estate or subsequent marital community. Id.
In the present case, John's evidence suggests that his skill and industry were not major factors in causing his earnings to increase following termination of the community. As we noted above, the employee benefit rate and benefit service increased due only to John's continued full time employment with Olin. As he stated in his own brief, John had nothing whatsoever to do with the pension fund's increase or decrease. John seems to equate personal effort with the fact that he was the person who went to work everyday and, therefore, the effort of going to work was his only. This is an erroneous meaning attached to what is meant by "personal effort or achievement." Clearly, the decisions of Moore and Hare make it apparent that the mere fact of continued employment, without more, is insufficient proof that the pension fund increases were due to one's personal effort or achievement.
John next argues that the trial judge refused to dissolve a wrongfully issued TRO granted in favor of Virginia and, therefore, he is entitled to be reimbursed for attorney fees and court costs incurred when he filed his motion for dissolution of the TRO.
The trial court, on March 5, 1993, granted a TRO prohibiting the distribution of John's pension benefits. John moved the court to dissolve the TRO and award damages based upon the provisions of La.R.S. 20:33[1] which he claims entitles him to a dissolution of the TRO and damages. The trial court refused to dissolve the TRO on the basis that La.R.S. 20:33 exempts pensions only from debt liabilities, not from seizure by who is potentially the rightful owner. Following the refusal of the trial court, Ms. McCown's attorney voluntarily dismissed the restraining order in the same month it was issued. Mr. McCown suffered no interruption in the receipt of his pension payments and is, therefore, not entitled to damages and attorney fees.
Appeals from judgments involving TROs are governed by La.Code Civ.P. art. 3612 which provides in pertinent part:
"There shall be no appeal from an order relating to a temporary restraining order."
Under the clear provisions of the above article, there can be no appeal from the trial court's order relating to a TRO. The trial court's refusal to dissolve the TRO was an order relating to a TRO. See, Chauvin v. Matherne, 419 So.2d 1276 (La.App. 1st Cir. 1982); See also, Vienna Bend Subdivision Homeowners v. Manning, 459 So.2d 1345 (La.App. 3d Cir.1984) and Lusk v. Lusk, 536 So.2d 468 (La.App. 1st Cir.1988). For the reasons expressed clearly in our previous *1254 decision, Budd Construction Co., Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3d Cir.), writ denied, 404 So.2d 1262 (1981), we adhere to the view that we have no power to consider on appeal the propriety of a trial court judgment refusing to dissolve a TRO.
For the above reasons, the judgment of the trial court is affirmed at defendant-appellant's, John McCown's, cost.
AFFIRMED.
NOTES
[1] La.R.S. 20:33(1) provides:

§ 33. Pension, annuity, and gratuity payment by employers
The following shall be exempt from all liability for any debt except alimony and child support:
(1) All pensions, all proceeds of and payments under annuity policies or plans, all individual retirement accounts, all Keogh plans, all simplified employee pension plans, and all other plans qualified under Sections 401 or 408 of the Internal Revenue Code. However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon. No contribution shall be exempt if made less than one calendar year from the date of filing for bankruptcy, whether voluntary or involuntarily, or less than one calendar year from the date writs of seizure are filed against such account or plan.