358 So.2d 919 (1978)
Winston H. SIMS, Plaintiff-Appellee-Respondent,
v.
Marcella McGinnis SIMS, Defendant-Appellant-Relator.
No. 60719.
Supreme Court of Louisiana.
April 10, 1978.
On Rehearing May 19, 1978.
*920 Michael Cavanaugh, Cavanaugh & Ducote, Baton Rouge, for defendant-appellant-relator.
Charles W. Wilson, III, Watson, Blanche, Wilson & Posner, Baton Rouge, for plaintiff-appellee-respondent.
TATE, Justice.
The issue before us concerns the determination of a divorced wife's interest in her former husband's pension rights, insofar as they are attributable to his employment during the existence of the community.
The issue arises in the context of a suit to partition the community's assets following its dissolution as the result of a divorce. The trial court held that the wife's interest in the husband's pension rights was limited to one-half its cash withdrawal value at the date of dissolution of the community ($14,446.95), and the court of appeal affirmed. 349 So.2d 974 (La.App. 1st Cir. 1977).
We granted certiorari, 351 So.2d 175 (La. 1977), because we believed the wife's contention to be meritorious that, instead, she was entitled to have recognized her interest in the pension funds or rights, when they become actually payable to or for the husband, in the proportion that they are attributable to the husband's employment during the community.
Facts
Mr. and Mrs. Sims were married on May 30, 1946. They were divorced on November 19, 1975, nearly thirty years later. The husband has been employed by the federal government since June 18, 1956 as an air traffic controller.
*921 During the existence of the community, he had acquired certain federal pension rights as a result of his employment. 5 U.S.C. 8331 et seq. The parties agree that the retirement plan, or at least the funds contributed by the husband to it, are a community asset. They differ, as noted above, as to what interest the wife acquired in this community asset.
The federal retirement plan is contributory the employee and the government each deposit 7% of the employee's basic pay into the United States Treasury. 5 U.S.C. § 8334(a)(1), (2). The annuity, however, is not tied to the amount of those contributions, but is made according to a schedule provided by statute. 5 U.S.C. § 8339.
The plan includes several alternative rights acquired by contributions to the plan. At least two annuity rights are here pertinent:
An annuity based upon a percentage of average pay during federal employment: (1) is payable to an employee with at least five years' creditable service, which will become payable when the employee reaches 62 years of age, 5 U.S.C. § 8333, 8338; or (2) is payable to an air controller who is voluntarily or involuntarily separated from the service after the employee becomes 50 years of age and has completed 20 years of service in that capacity, 5 U.S.C. 8336(e) (1972).
An employee, upon separation from the federal service, may also obtain the refund of contributions made by him (not including the matching employer contributions) in lieu of any annuity right. 5 U.S.C. § 8342(a).
At the time the community was dissolved by divorce in 1975, the husband had 19 years and 5 months of creditable service. He did not become 50 years of age until September 23, 1976, about ten months later. He thus did not become eligible to retire and receive immediate retirement benefits until that latter date.
On the date the community was dissolved, if the husband had then separated from the federal service, his retirement annuity would not commence until he was 62 years of age; or, upon such separation he could have received the return of the $14,446.95 contributions made by him from community funds. (For later reference, illustrative computations of annuities payable are included in Appendix A of this opinion.)

The community's interest in the pension plan or in payments made to or for the husband or as a result of his employment or contributions to such plan during the community

The trial and intermediate courts held that the wife's interest in the pension plan was limited to the return of one-half of the community funds contributed to it, as if the husband had resigned his job and had elected this option on the date the community was dissolved.
This reasoning and result is erroneous on several accounts: (1) in fact, the husband did not elect this option but, instead, continued his employment; and (2) if this method of fictitious valuation had been appropriate, it overlooks that the contributions which established the pension rights, under the actual circumstance of continued employment, included not only the employee's contributions but also the matching contributions by employer, which we have previously held represent an asset acquired by community earning and efforts, T. L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976).
More essentially, however, this reasoning and result underlook the fundamental nature of the community asset acquired in a retirement plan through employment of either spouse during the existence of the community. The community interest stems not only from contributions made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community (i. e., as an asset "acquire [d] during the marriage," Civil Code Article 2402), whether based on the community's contributions or not. T. L. James & Co., Inc. v. Montgomery, cited above.
*922 As stated in T. L. James & Co., 332 So.2d 851: "When acquired during the existence of a marriage, the right-to-share [in a retirement plan] is a community asset which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time." See also Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1966).
A spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, therefore an asset of the community. Further, the community interest is not limited to the refund of community funds paid, usually (as here) greatly less in monetary value than the pension rights acquired as a result of the employment of one spouse of the community.
Accordingly, except in an isolated decision to be noted below, our courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
See: T. L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Moon v. Moon, 345 So.2d 168 (La. App.3d Cir. 1977), certiorari denied 347 So.2d 250 (La.1977); Swope v. Mitchell, 324 So.2d 461 (La.App.3d Cir. 1975); Lynch v. Lawrence, 293 So.2d 598 (La.App.4th Cir. 1974), certiorari denied 295 So.2d 809 (La. 1974)[1]; Laffitte v. Laffitte, 253 So.2d 120 (La.App.2d Cir. 1971). Cf. Berry v. Equitable Life Assurance Society of U. S., 316 So.2d 399 (La.App.1st Cir. 1975). See also: LeVan, Allocating Deferred Compensation in Louisiana, 38 La.L.Rev. 35 (1977); Hughes, Community-Property Aspects of Profit-Sharing and Pension Plans in Texas, 44 Tex.L.Rev. 860 (1966).
Not in accord with the above decisions is Langlinais v. David, 289 So.2d 343 (La. App.3d Cir. 1974), followed by the intermediate court in the present case.[2] There, the intermediate court rejected the wife's claim to a share of the retirement benefits, since the husband had not retired at the date of the community's dissolution; it awarded her only one-half the value of the husband's account in the retirement fund. The result and reasoning are inconsistent with T. L. James & Co. and the other decisions cited, and the decision is overruled insofar as inconsistent with them and with the present opinion.
As in T. L. James & Co., Messersmith, and the other decisions cited, our decree will recognize the wife's proportionate interest in the retirement annuities, if and when they become payable, without attempting to fix a present monetary value for this interest, since it has none. (Unless *923 the employment actually terminated following dissolution of the present community, for instance, the cash withdrawal value of the contributions is a fictitious value not proportionate to the actual retirement rights retained by the still-employed husband. See footnote 4 below.)
Due to the nature of the interest acquired by the community, as these decisions likewise recognize, it is not merchantable or susceptible to partition by licitation.[3] The recognition of the respective interests of the spouses in this non-merchantable asset acquired during the community is analogous to a partition or division in kind. Of course, the parties between themselves can agree upon a valuation for purposes of conventional partition. See Due v. Due, 342 So.2d 161, 166 (La.1977).
The wife's proportionate interest in any retirement plan proceeds, if and when payable to or for the husband's account.
At the time of the dissolution of the community, as well as of the present date (at which, we are informed by the briefs, the husband is still employed as an air traffic controller), the community interest in the retirement plan has no immediate redeemable cash value. Until the employee is separated from the service, dies, retires, or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account.[4]
Nevertheless, under the decisions cited, the wife is entitled to a declaration at this time of the interest attributable to the community of any such payments, if and when they become due in the future. The interest attributable to (acquired by) the community in such payments, when they become due, is the proportionate part of them which results from a spouse's employment or contributions during the existence of the community. When the community is dissolved, the non-employed spouse is entitled to have recognized his or her one-half interest in this community asset, i. e., the right to receive payments from employee benefit plans, to the extent (proportion) that these payments result from the employment or contributions during the community. T. L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976) and decisions therein cited.[5] *924 In the present plan, the federal employee's annuity is determined by multiplying his average pay, as determined by the statute, by from 1½ to 2 per cent, depending upon his years of service. 5 U.S.C. § 8339(a). The amount of the annuity to which the employee will eventually be entitled, if he retires, cannot yet be fixed; the employee has not yet retired, and it is the date of his retirement (or separation or death) which fixes the employer's obligation.
The contractual arrangements between the employer and the employee, by which benefits are not payable until such determinative date, is not altered by the dissolution of the community prior thereto. The community's dissolution before such date does not substitute for the employee's retirement (or separation or death) as the event which fixes the employer's liability and which causes payments to become due. When they do become due, however, so as then to have a determinate value, the non-employed spouse is entitled to receive the proportion of them recognized by this judgment as attributable to the other spouse's employment during the existence of the community.
In the present case, the husband's creditable service during the existence of the community was 19 years, 5 months.[6] The defendant wife has a one-half interest in compensation to the plaintiff husband which is attributable to that period. The proper ratio can be expressed in this way:
 Portion of pension attributable to creditable
 service during existence of community
 (19 years, 5 months) × ½ × annuity (or
 ______________________________________________
 Pension attributable to total creditable lump-sum payment)
 service (still not determined)
This computation determines the wife's interest in each installment ultimately paid by the government to the husband or his designee.[7]
(As has been stated, the ultimate amount of the annuity payable to the husband cannot be determined until the date of his retirement or separation from the service. We have, however, attached as Appendix A to this opinion an illustration of the application of the above formula to retirement benefits to which the husband would be entitled if he had retired on March 18, 1978.)

Decree
For the foregoing reasons, we reverse the judgments of the previous courts. It is ordered, adjudged, and decreed that there be judgment in favor of the defendant, Mrs.
*925 Marcella McGinnis Sims, and against the plaintiff, Winston H. Sims, recognizing and declaring her interest in any annuities, lump-sum payments, or other benefits from the Civil Service Retirement and Disability Fund, 5 U.S.C. § 8331 et seq., to or for her husband, Winston H. Sims, as a result of his federal employment for the 19 years and 5 months he was so employed during the community formerly existing between the plaintiff and the defendant.
All costs of this court and of appellate review are assessed against the husband-appellee; all other costs, as imposed by the district court.
REVERSED AND RENDERED.
SUMMERS, J., concurs in the result.
DIXON, J., dissents. A right need not be marketable to have value. If the value of the right is ascertainable, the wife is entitled to ½ that value on dissolution of the community. If it is not ascertainable, she is entitled to naught.

APPENDIX A
In illustration of the application of the formula, we compute the community's (and the wife's) interest in any pension payable to the husband, if he had retired on March 18, 1978 (i. e., after 21 years and 9 months of service as federal air controller, during 19 years and 5 months of which he was married to the defendant and living in community with her). The figures below are set forth merely by way of illustration. No claim is made to exact mathematical accuracy or to the necessary correctness of the husband's average pay ($19,599.30) roughly calculated as the basis for the pension annuity.
As presently enacted, 5 U.S.C. § 8339(a) apparently provides that Mr. Sims' annuity will be calculated on the basis of 1½ per cent for his first five years, 1¾ per cent for his next five years, and 2 per cent for each additional year.
If he were to retire March 18, 1978, the calculation would be as follows:

1½% × average pay ($19,599.30) × 5 = $1,469.95 plus
1¾% × $19,599.30 × 5 = 1,714.94 plus
 2% × $19,599.30 ×11.75 = 4.605.88
 _________
 (11 years, 9 mos.)
TOTAL ANNUITY $7,790.77

Of this amount the following is attributable to his employment during the community:

1½% × average pay × 5 = $1,469.95 plus
1¾% × average pay × 5 = 1,714.94 plus
 2% × average pay × 9.42 = 3.692.45
 _________
 (9 years, 5 mos.)
PORTION OF ANNUITY ATTRIBUT $6,877.34
ABLE TO EMPLOYMENT DURING
THE COMMUNITY

The wife's share of the community attributable to her one-half interest in the community is therefore calculated as follows:

$6.877.34
_________ × ½ × $7,790.77 = $3,438.67
$7,790.77

(It is to be noted that, if the husband had retired on the date the community was dissolved, he was entitled to elect to receive a deferred annuity commencing at age 62, 5 U.S.C. § 8333, 8338, instead of withdrawing his contributions, 5 U.S.C. § 8342(a). Had he done so, under the above computations his pension would have been $6,877.34 annually, based upon his 19 years and 5 months of employment, from age 62 for the remainder of his life, together with certain survivor's benefits, instead of the refund of $14,446.95 of contributions.)

ON REHEARING
PER CURIAM.
Relator, Marcella Sims, has applied for a rehearing contending that while we were correct on the central issue in this case we erred in determining that the husband's creditable service (for retirement) during the existence of the community was 19 years 5 months. She contends that an additional four years of military service should be added, thereby increasing the husband's total of creditable service toward his federal retirement to 23 years 5 months.
In our original decision we determined at footnote 6 of our opinion that Mr. Sims was not entitled to credit for that 4 years of military service by virtue of 5 U.S.C. § 8332(c)(1) [inadvertently cited originally as 5 U.S.C. § 8332(e)(1)]. We now believe that in this respect we may have erred. While the sections of the federal statute are by no means clear, as we now read 5 U.S.C. § 8332(c)(1) Mr. Sims would seem to be entitled to a credit for his four years of military service.
Section 8332(c) of Title 5 of the United States Code provides:
(c) Except as provided by subsection (d) of this section [concerning Members of *926 Congress], an employee or Member shall be allowed credit for periods of military service before the date of the separation on which title to annuity is based. However, if an employee or Member is awarded retired pay on account of military service, his military service may not be credited unless the retired pay is awarded
(1) on account of a service-connected disability
(A) incurred in combat with an enemy of the United States; or
(B) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or
(2) under chapter 67 of title 10. [relating to non-regular service, which we understand to be for reserve rather than regular military service]
Under this section a civil service employee is entitled to credit for military service except when he is already receiving pay "on account of military service," i. e., receiving a military pension. In such cases military service can only be credited with respect to the civil service pension if the military pension being received has been awarded on account of: 1) a service connected disability; or 2) a non-regular service (Reserve) pension.
However, rather than correcting our original numerator of 19 years 5 months to 23 years 5 months we deem it appropriate to leave this matter unresolved at this time. Our difficulty with interpreting the federal statute indicates the inadvisability of making an unnecessary advance determination of Mr. Sims' years of creditable service in the plan. When a final determination of such is made by the proper authority within the federal retirement system the appropriate number of years of service during the existence of the community can be included in the formula set out in our original opinion to determine Mrs. Sims' interest in the funds to be received under the plan.
Because our decree in this per curiam on application for rehearing is adverse to respondent, we will afford him an opportunity to seek a rehearing within fourteen days from rendition of this per curiam opinion limited to the change in the decree.
For the foregoing reasons our original decree in this matter is amended so as to read as follows:
We reverse the judgments of the previous courts. It is ordered, adjudged, and decreed that there be judgment in favor of the defendant, Mrs. Marcella McGinnis Sims, and against the plaintiff, Winston H. Sims, recognizing and declaring her interest in any annuities, lump-sum payments, or other benefits from the Civil Service Retirement and Disability Fund, 5 U.S.C. § 8331 et seq., to or for her husband, Winston H. Sims, as a result of his federal employment and or service credit rights earned during the existence of the community between the plaintiff and the defendant.
All costs of this court and of appellate review are assessed against the husband-appellee; all other costs, as imposed by the district court.
REVERSED AND RENDERED.
NOTES
[1] The result in this decision confirmed the right of the wife to receive a portion of the husband's pension, when he commenced drawing it, attributable to the employment during the community. We do not necessarily approve the rationale or formula, insofar as in conflict with the clarification provided by the T. L. James & Co. and by the present decision. See also 35 La.L.Rev. 308-09 (1975).
[2] Langlinais itself to some extent relied upon Hamilton v. Hamilton, 258 So.2d 661 (La. App.3d Cir. 1971). There, however, the plaintiff wife sought (only) a money judgment recognizing her value in the husband's employee benefit plans, claiming only one-half the contributions made to these plans during the marriage. The husband's appeal questioned her right to the value of contributions made by the employer (this contention was rejected) and also questioned contributions made during an interval of divorce before re-marriage. He further sought partition by licitation, instead of judgment fixing the wife's interest, a demand which was rejected. Except for the last issue, the decision does not under its pleading reach the issue which concerns us now.
[3] Further, like most retirement plans, the instant one forbids any execution-sale or nonfamily assignment of the proceeds of the plan. 5 U.S.C. § 8346(a). However, federal law does not preclude a state from classifying federal retirement rights as community property. See: Moon v. Moon, 345 So.2d 168, 176 (La.App.3d Cir. 1977); Swope v. Mitchell, 324 So.2d 461 (La.App.3d Cir. 1975).
[4] If the husband employee had separated from the federal service on the date of dissolution of the community, it would have had such value if the employee had elected to receive the return of his contributions, 5 U.S.C. § 8342(a), instead of opting for receiving deferred retirement benefits commencing at age 62, 5 U.S.C. § 8333, 8338. He did not do so, however, so this valuation is inapplicable.

About a year after the divorce, the husband could have retired at age 50. 5 U.S.C. § 8336(e). He did not do so, however. At present, the community's retirement-plan interest, as yet inchoate, is in annuities or lump-sum payments to become payable in the future, as determined by the husband's good-faith election of options available to him or by his death, separation from service, or involuntary retirement.
[5] The two main prototypes of employee benefit plans are the "defined contribution" plan and the "defined benefit" plan. See Comment, The Relation of Community Property and Forced Heirship to Employee Retirement Plans, 51 Tul. L.Rev. 645, 647-48 (1977). In essential effect, the differences between these two types of plans are:

(1) In the "defined contribution" plan, the employer promises to pay the employee, upon the occurrence of certain conditions, stated benefits from a sum comprised of contributions to a trust for the employee's account. The ultimate value of the "pension" or payment to the employee, therefore, is directly related to the total of the sums contributed by the employer and, sometimes, by the employee as well. In this type of plan, the contributions made to the account during the community determine the interest of the community to share in the ultimate payments to the beneficiaries, in the proportion that such contributions made during the community bear to the total of the contributions from which the pension payments are made. See T. L. James & Co. v. Montgomery, cited above, in which the court thought it was concerned only with "defined contribution" plans.
(2) In the "defined benefit" plan, the employer promises to pay the employee, upon the occurrence of certain conditions, stated benefits based upon the length of the employee's service. The contributions of the employer and employee to the fund which secures this promise are based upon actuarial computations, but they are not otherwise related to the particular benefits payable or to the length of any particular employee's service. See LeVan, 2 La. Estate Planner 45 (1976). The present litigation's plan, for community valuation purposes, is a "defined benefit" plan, because the computation of the annuity is unrelated to the contributions made by either employer or employee. In this type of plan, Professor LeVan suggests, allocations or benefits should be determined on the basis of benefits "purchased" during the community rather than on the amount of the community's contributions. LeVan, Allocating Deferred Compensation in Louisiana, 38 La.L. Rev. 35, 45 (1977).
[6] The defendant suggests that the creditable service is actually 23 years, 5 months, including in the calculation plaintiff's four years of military service. But careful examination of the legislation which controls the issue reveals that plaintiff's military service is creditable only if his retirement is "on account of a service-connected disability." 5 U.S.C. § 8332(c)(1). This is not the case here.
[7] Deferring the actual valuation until distribution to the annuitant substantially increases the chance that the numerous variables which affect the ultimate pension will then be taken into account. See, e. g., the discussion in Hughes, "Community-Property Aspects of Profit-Sharing and Pension Plans in Texas Recent Developments and Proposed Guidelines for the Future" 44 Tex.L.Rev. 860, 880-81 (1966).