801 So.2d 1093 (2001)
Paige B. SULLIVAN
v.
Charles P. SULLIVAN.
No. 01-0006.
Court of Appeal of Louisiana, Third Circuit.
June 13, 2001.
Writ Denied November 2, 2001.
Jack W. Caskey, Attorney at Law, Lake Charles, Counsel for Paige B. Sullivan.
James Edward Hopkins, Attorney at Law, Sulphur, Counsel for Charles P. Sullivan.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
AMY, Judge.
In the case before us, the plaintiff filed a rule to establish her interest in her former husband's state retirement benefits, including those funds deposited into a Deferred Retirement Option Plan (DROP). The trial court found that the plaintiff was not entitled to the DROP funds, and she appealed. For the following reasons, we reverse and render judgment in favor of the plaintiff/appellant.

Factual and Procedural Background
Paige B. Sullivan and Charles P. Sullivan were married on March 26, 1964. The two were subsequently divorced and the community was legally terminated as of February 26, 1988. A judgment partitioning the community property was filed December 11, 1990, wherein the trial court ordered that each party had an interest in "any retirement plan, and in any annuity or lump sum payment paid to either party" in accordance with the formula established in Sims v. Sims, 358 So.2d 919 (La.1978).[1]
During the marriage, Mr. Sullivan was a participant in the Teachers Retirement *1094 System of Louisiana (TRSL). Mr. Sullivan became eligible for retirement from the system in June of 1995, after reaching thirty years of service. At this time, rather than terminating employment and begin receiving a monthly retirement allowance, Mr. Sullivan elected to participate in the Deferred Retirement Option Plan (DROP) program. The DROP program is an optional method of retiring whereby an employee changes his status in the state retirement system from "active member" to "retiree" but continues to work at his regular job while he accumulates money in an individual DROP account based on the amount he would have received as a monthly retirement benefit had he in fact retired. See La.R.S. 11:786, et seq. See also Bailey v. Bailey, 97-1178 (La.2/6/98); 708 So.2d 354.[2]
On September 29, 1998, Ms. Sullivan filed a rule to establish her undivided interest in Mr. Sullivan's retirement benefits, including the monies deposited in the DROP account. Prior to a hearing on the rule, the parties stipulated that Ms. Sullivan was entitled to thirty-one percent of the retirement benefits earned in the TRSL. Thus, the remaining issue to be decided by the trial court was whether or not the proceeds and interest accumulated in the DROP account should be considered a part of Mr. Sullivan's retirement benefits.
In written reasons signed July 20, 2000, the trial court denied Ms. Sullivan's claim or right to the DROP funds, reasoning:
The fact that the DROP program was not a part of Mr. Sullivan's retirement package which would yield a monthly retirement benefit, but a separate and voluntary program offered to those qualified under the DROP program and solely earned by Mr. Sullivan's participation during the three (3) years after the termination of the prior community with Mrs. Sullivan. The benefits derived from the DROP program have nothing to do with the benefits earned by him through TRSL. The funds received by Mr. Sullivan are a result of his singular personal decision to enter the DROP program, seven (7) years after the termination of the prior community with Mrs. Sullivan. This time element and the fact that Mr. Sullivan did not acquire or have ones right to participate in the DROP program during the community, (see Civil Code Article 2338) distinguishes this case from Bailey v. Bailey, 708 So.2d 354 (La.1998).[3]
(Footnote added.)
Thereafter, Ms. Sullivan appealed the judgment of the trial court asserting that *1095 it was manifest error and contrary to Louisiana jurisprudence to deny her claim to thirty-one percent of the DROP proceeds.

Discussion of the Merits
In her brief on appeal, Ms. Sullivan alleges that the supreme court has recently decided the issue presented in this matter in the case of Bailey v. Bailey, 97-1178 (La.2/6/98); 708 So.2d 354. She claims that the trial court's refusal to follow the Bailey decision is clear error and should be reversed.
In Bailey, the supreme court addressed the principal issue of whether the spouse of a state employee who participates in a state retirement system's DROP program is entitled to any portion of the DROP account that is attributable to funds credited by the system after the termination of the community. Id. After thoroughly analyzing the nature of the DROP program and revisiting its prior decisions in T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1975) and Sims v. Sims, 358 So.2d 919 (La.1978), which set forth the standard to be used in deciding the community property rights to ordinary retirement plans, the supreme court determined that DROP proceeds are part of an employee spouse's retirement benefits and are apportionable between community property and the employee spouse's separate property in accordance with the Sims formula. Id.
Conversely, Mr. Sullivan argues that Bailey is not controlling in this matter because of a significant factual distinction not discussed by the appellant. He alleges that this matter is distinguishable from Bailey in that at the time Mr. and Mrs. Bailey terminated their community, Mr. Bailey had already begun participating in the DROP program. Unlike here, where the community had been legally terminated seven years prior to Mr. Sullivan's entering the DROP program. In support of this proposition, Mr. Sullivan cites Schlosser v. Behan, 98-280 (La.App. 5 Cir. 11/25/98); 722 So.2d 1129. In Schlosser, the fifth circuit affirmed a trial court's judgment denying a former spouse's right to DROP proceeds after a seventeen-year lapse between the parties divorce and the employee spouse's entering the DROP program. In affirming the decision, the fifth circuit distinguished Bailey by stating:
Primarily because Schlosser did not enter the DROP program until 17 years after termination of the community he shared with Ms. Behan, we cannot say the trial judge erred in excluding Ms. Behan from these benefits. This time element distinguished the instant case from Bailey v. Bailey, 708 So.2d 354 (La.1998), in which a community existed during part of the time the employee was in DROP.
Id. at p. 6; 1131.
Mr. Sullivan argues that "Schlosser represents an equitable principle grafted on to Bailey which recognizes that because of the unique features of the DROP, when the employee enters DROP after the termination of the community, and particularly when a substantial period of time has passed between termination of the community and entering DROP, that it would be inequitable for the non-employee spouse to participate with him in receiving DROP *1096 benefits." Thus, Mr. Sullivan claims, the trial court was correct in refusing to apply the holding of Bailey to this case.
After our review of the applicable jurisprudence, we conclude that the trial court erred in finding Bailey distinguishable and not controlling in the instant matter. Although it is true that the termination of the community in Bailey took place after the employee spouse elected to participate in the DROP program, the supreme court specifically reversed the trial court's judgment, and the appellate court's affirmation of the judgment declaring the funds credited to the DROP account after termination of the community until the date of the completion of the DROP program to be the employee spouse's separate property. Bailey, 97-1178; 708 So.2d 354. While the supreme court was faced with a slightly different factual scenario than is presented in the instant matter, it ultimately determined that the funds deposited in the DROP account after termination of the community were nevertheless retirement benefits subject to apportionment in accordance with the Sims formula. The supreme court reasoned:
In the DROP situation, the employee spouse's election to enter the DROP program operates, as of the date of that election, to fix the base amount of the employee's eventual monthly retirement benefits, and this amount is credited to the DROP account monthly as retirement benefits, although the actual receipt of the funds in that account is deferred until the employee actually retires....
If Mr. Bailey had actually retired on the date he entered the DROP program, Mrs. Bailey clearly would have had the right to share, in the stipulated percentage, in the retirement benefits he would have received. The fact that the same amount of monthly retirement benefits was credited to a deferred-receipt account under a fictitious retirement for a specific period should not change that result.
Id. at pp. 7-8; 358 (footnotes omitted.)
Accordingly, we conclude that the funds deposited into Mr. Sullivan's DROP account are directly attributable to Mr. Sullivan's employment and retirement contributions prior to the termination of the community and, thus, are part of his retirement benefits. That Mr. Sullivan was not eligible to participate in the DROP program until after termination of the community, does not negate the fact that the DROP funds are derived from the retirement benefits which accrued during the pendency of the marriage. Cf. Schlosser, 98-280; 722 So.2d 1129. Had Mr. Sullivan chosen not to participate in DROP and retired on the date he first became eligible, Ms. Sullivan would have been entitled to receive thirty-one percent of the retirement benefits payable to Mr. Sullivan. We find here, as the supreme court held in Bailey, that the fact that Mr. Sullivan chose to continue working while having the monthly retirement benefits diverted into a DROP account does not diminish Ms. Sullivan's right to a portion of those benefits.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of the plaintiff/appellant, Paige B. Sullivan, for thirty-one percent of the DROP funds accrued by defendant, Charles P. Sullivan. All costs of this appeal are assessed to the defendant/appellee.
REVERSED AND RENDERED.
NOTES
[1] In Sims, the supreme court established the following formula to be used in calculating a spouses interest in a deferred compensation plan earned during the existence of the community:

Portion of pension attributable to creditable service during the existence of community X annuity or lump sum X½
Pension attributable to total creditable service (yet to be determined)
[2] In Bailey, 97-1178, p. 4; 708 So.2d at 356, the supreme court explained:

La.Rev.Stat. 11:447-451 authorize a state employee who is eligible for retirement to participate in the deferred retirement option plain, "[i]n lieu of terminating employment and accepting a retirement allowance." La. Rev.Stat. 11:447 A. Under DROP, an eligible state employee may enroll in the plan and is thereafter "considered by the system to be in a retired status" for the period he or she participates in the program. La.Rev.Stat. 11:448 A. Although the employee continues to work, payments are credited monthly into the employee's DROP account in the amount of the retirement benefits that the employee was eligible to receive if he or she had retired. La.Rev.Stat. 11:448 C. The base amount of the employee's eventual retirement benefit is fixed as of the time he or she enters the DROP program. La.Rev.Stat. 11:448 B. The employee does not receive the funds credited into the account until he or she actually retires, La.Rev.Stat. 11:450 A, but neither does the employee receive any service credit in the calculation of the eventual monthly retirement benefits for the years that the employee continues to work while in the DROP program. La.Rev.Stat. 11:448 B.
[3] La.Civ.Code art. 2338 provides:

The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.