817 So.2d 466 (2002)
Tony A. LODRIGUE
v.
Helen Dalme LODRIGUE.
No. 01-1630.
Court of Appeal of Louisiana, Third Circuit.
May 8, 2002.
Charles W. Seaman, Natchitoches, LA, for Plaintiff/Appellant Tony A. Lodrigue.
C.R. Whitehead, Jr., Whitehead Law Offices, Natchitoches, LA, for Defendant/Appellant Helen Dalme Lodrigue.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
JIMMIE C. PETERS, J.
This litigation arises out of a trial court judgment dividing Tony A. Lodrigue's (Tony) retirement benefits in the Municipal Police Employees' Retirement System (Police Retirement System) between his former wife, Helen Dalme Lodrigue (Helen), *467 and him. Both parties appeal a portion of that judgment.
The basic facts are not at issue. Tony and Helen were married on November 24, 1967, and the community of acquets and gains terminated when the parties separated on July 17, 1987. Tony obtained a legal separation on August 13, 1987, and a divorce on June 17, 1988. When he joined the Natchitoches City Police Department (Department) on May 7, 1969, he immediately began participating in the Police Retirement System.
Prior to their marriage, Tony had served in the United States Military. After he and Helen married, the Louisiana Legislature enacted La.R.S. 33:2374(D),[1] which authorized the purchase of prior service credit in the Police Retirement System for military service. Tony took the necessary steps to receive credit for his two years of military service.
On February 10, 1991, Tony entered the Police Retirement System's Deferred Retirement Option Plan (DROP), La.R.S. 11:2221, and remained in DROP until February 10, 1994. As of the January 9, 2001 hearing, Tony was still employed with the Department and had reentered the Police Retirement System after completing his three years of participation in DROP. Upon reentering the Police Retirement System, Tony continued to contribute to his retirement program until May 18, 2000.

Tony's Appeal
The trial court awarded Helen a percentage of Tony's accumulated retirement benefits to be calculated as follows:
One-half (½) of a fraction, the numerator of which is the number of years of service credit earned or purchased by Tony A. Lodrigue during the existence of the aforesaid community property regime, to-wit, from May 7, 1969 until July 17, 1987, and the denominator of which is the total number of years of service credit Tony A. Lodrigue has with [the Retirement System] from May 7, 1969 to February 10, 1991. Helen Dalme Lodrigue shall have no service credit subsequent to February 10, 1991, nor receive any percentage thereof.
Tony does not contest this portion of the judgment. However, the trial court further ordered that the DROP benefits be divided in the same percentage. Tony appeals this portion of the judgment.
In his assignments of error, Tony asserts that the trial court erred in concluding that Helen should share the DROP benefits in the same percentage as his retirement benefits. For the following reasons, we find no merit in Tony's assignments of error.
In considering the nature of DROP as it affects an individual's retirement plan, the trial court relied on the description of the Louisiana State Employees' Retirement System (LASERS) DROP program as set forth by the supreme court in Bailey v. Bailey, 97-1178, pp. 4-5 (La.2/6/98), 708 So.2d 354, 356:
The DROP program is described by LASERS in its publication to members as follows:
DROP is an optional method of retiring from the Louisiana State Employees' Retirement System (LASERS).... When an employee enters DROP, his status in LASERS changes from active member to retiree, even though he continues working at his regular job. The employee can participate in DROP for up to three years. During his DROP participation, he accumulates money in an *468 individual account based on what he would have received as a monthly retirement benefit. He also continues to earn his regular salary. He can withdraw the money from his DROP account after he ends state employment-either as a lump sum or a series of payments spread out over time.
La.Rev.Stat. 11:477-451 authorize a state employee who is eligible for retirement to participate in the deferred retirement option plan, "[i]n lieu of terminating employment and accepting a retirement allowance." La.Rev.Stat. 11:447 A. Under DROP, an eligible state employee may enroll in the plan and is thereafter "considered by the system to be in a retired status" for the period he or she participates in the program. La. Rev.Stat. 11:448 A. Although the employee continues to work, payments are credited monthly into the employee's DROP account in the amount of the retirement benefits that the employee was eligible to receive if he or she has retired. La.Rev.Stat. 11:448 C. The base amount of the employee's eventual monthly retirement benefits is fixed as of the time he or she enters the DROP program. La.Rev.Stat. 11:448 B. The employee does not receive the funds credited into the account until he or she actually retires, La.Rev.Stat. 11:450 A, but neither does the employee receive any service credit in the calculation of the eventual monthly retirement benefits for the years that the employee continues to work while in the DROP program. La.Rev.Stat. 11:448 B.
As far as LASERS is concerned, the employee is retired and is credited in the DROP account with the amount of retirement benefits that would be due; as far as the employer is concerned, the employee continues to work and receives the salary for work performed; and as far as the employee is concerned, he or she receives the salary for the work performed and receives credit in the DROP account (which is not available to the employee until sometime in the future) for the retirement benefits that would have been paid had he or she retired, but is ineligible during the DROP period for accruing additional credits toward the calculation of either the base retirement benefits or the possible supplemental benefits earnable upon employment after the DROP period ends.
After the period of participation in the DROP program, the employee, if he or she elects to remain in service, begins accruing additional service credit in the calculation of his or her eventual monthly retirement benefits, but such additional credit is in the nature of a supplemental pension, in addition to the base benefits that were fixed at the time the employee entered the DROP program. La.Rev.Stat. 11:450 D.
In Bailey, Mr. Bailey began a three-year participation in LASERS' DROP in October of 1993, and on January 28, 1994, the community of acquets and gains previously existing between him and Mrs. Bailey terminated. Mr. Bailey completed his participation in DROP in October of 1996. The trial court rendered judgment classifying the funds deposited in DROP prior to January 28, 1994, as community property and subject to division pursuant to the formula established in Sims v. Sims, 358 So.2d 919 (La.1978), but classifying the funds deposited in DROP after the termination of the community of acquets and gains as Mr. Bailey's separate property. In an unpublished opinion, this court affirmed the trial court's judgment.
The supreme court then "granted certiorari primarily to consider the res nova question of whether an employee spouse's DROP account, to the extent attributable *469 to funds credited by LASERS after the termination of the community, constitutes the separate property of the employee spouse, or is apportionable between community property and separate property in accordance with the Sims formula." Bailey, 708 So.2d at 356 (emphasis added). In answering the question presented, the supreme court concluded that all of Mr. Bailey's DROP benefits credited to his DROP account after the termination of the community of acquets and gains were community property and subject to division by the Sims formula.
Tony argues in brief that Bailey is clearly distinguishable from the matter before us in that, in Bailey, the former husband's participation in DROP occurred both before and after the termination of the community regime, whereas his participation in DROP did not begin until over three and one-half years after the termination of the community regime. However, we do not find this factual distinction to be materially significant as the supreme court in Bailey clearly limited its inquiry to those funds deposited in DROP after termination of the community.
We also recognize that the fifth circuit has reached a result different from Bailey in Schlosser v. Behan, 98-280 (La.App. 5 Cir. 11/25/98), 722 So.2d 1129, writ denied, 98-3165 (La.3/26/99), 739 So.2d 791. In Schlosser, the parties were married in 1968 and divorced in 1976, and the former husband's participation in DROP began in 1993 and ended in 1996. The fifth circuit concluded that the seventeen-year gap between the termination of the community and Mr. Schlosser's participation in DROP distinguished it from Bailey, and, thus, it declined to consider his contributions to DROP as community property. However, in Sullivan v. Sullivan, 01-0006 (La.App. 3 Cir. 6/13/01), 801 So.2d 1093, writ denied, 01-2063 (La.11/2/01), 800 So.2d 876, this circuit declined to follow the rationale of Schlosser and relied on the supreme court's decision in Bailey. Furthermore, the second circuit in Bullock v. Owens, 35,078 (La.App. 2 Cir. 9/26/01), 796 So.2d 170, and the fourth circuit in Zalfen v. Albright, 00-1225 (La.App. 4 Cir. 7/18/01), 791 So.2d 800, writ denied, 01-2374 (La.12/7/01), 803 So.2d 31, declined to follow Schlosser. We also decline to follow Schlosser and find no merit in Tony's assignments of error.

Helen's Appeal
Helen asserts on appeal that the trial court erred in not crediting the two years of military service as a part of the community of acquets and gains in applying the Sims formula. She argues that, because the two years were not credited until after her marriage to Tony, they are presumed to be community property pursuant to La.Civ.Code art. 2340.
Louisiana Civil Code Article 2338 provides:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
Additionally, La.Civ.Code art. 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." Separate property includes "property acquired by a spouse prior to the establishment of a community property regime." La.Civ.Code art. 2341.
*470 The military service at issue occurred prior to the establishment of the community between Tony and Helen. However, Tony was required by former La.R.S. 33:2374(D) to purchase the prior service credit, which purchase occurred during the existence of the community. There is no evidence that Tony used separate funds to purchase the prior service credit. Because there is a presumption under La.Civ.Code art. 2340 that a thing in the possession of a spouse during the existence of the community is community property and because property acquired with community things is considered community property, the trial court erred in failing to credit the two years of military service as part of the community of acquets and gains.

DISPOSITION
For the foregoing reasons, we reverse the trial court's judgment to the extent it failed to credit the two years of military service as part of the community of acquets and gains. We affirm the trial court's judgment in all other respects. We tax costs of this appeal to Tony A. Lodrigue.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Louisiana Revised Statute 33:2374 has been redesignated as La.R.S. 11:2218 by Acts 1991, No. 74, § 3. Additionally, La.R.S. 33:2374(D) was repealed by Acts 1982, No. 769, § 3.