661 So.2d 529 (1995)
Judy Patrick WITHERS, Plaintiff-Appellee,
v.
Gerald Bruce WITHERS, Defendant-Appellant.
No. 27,348-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*530 Robert S. Tew, Monroe, for appellant.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz and Richard A. Bailly, Bastrop, for appellee.
Before MARVIN and WILLIAMS, JJ., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
In this action between divorced litigants, Gerald Withers appeals a judgment denying his demands to modify a 1992 Qualified Domestic Relations Order (QDRO) which calculated his ex-wife's interest in his retirement plan with his employer, International Paper Company, according to the formula set forth in Sims v. Sims, 358 So.2d 919 (La.1978).
The community property regime of the litigants endured for almost 19 years, 1970-1989. Withers worked for IP for about 14 years before the marriage, 1956-1970, and continued to work for IP through the trial in 1994, at which time he was 56 years old and had no intention of retiring in the immediate future. His credited service years before and after the marriage will eventually total more than his credited service years during the community.
Withers contends that the 1992 QDRO is ambiguous with respect to the classification of his post-divorce contributions to the retirement plan and that his ex-wife should not be allowed to share in any increase in his retirement benefits attributable to the pay raises he received after the divorce, citing Hare v. Hodgins, 586 So.2d 118 (La.1991).
Hare is correctly cited as authority for modifying the Sims formula in the employee spouse's favor when that spouse proves that his or her income, and correspondingly the amount of the eventual retirement benefit, increased substantially after the divorce, due to personal and extraordinary effort or achievement, such as when the employee receives pay raises based on individual merit. Hare explicitly provides, however, and the trial court here found, that modification of *531 the Sims formula is not warranted when the post-divorce raises are merely normal or ordinary raises based on nonpersonal factors such as longevity or inflation. The record supports that finding by the trial court. Withers did not prove his post-divorce pay raises were the result of his meritorious individual effort or achievement.
We affirm. We find Withers' appeal is not frivolous and deny appellee's demand for damages therefor.

DISCUSSION
In the 1989 judgment of separation, and in the 1992 QDRO obtained by Judy Withers pursuant to federal law, 26 U.S.C. § 414 (Internal Revenue Code) and 29 U.S.C. § 1056 (ERISA), her share of the community interest in the IP retirement plan was calculated based on the formula of Sims v. Sims, supra. This formula directs that the community interest in an unmatured retirement plan be expressed by a fraction, the numerator of which represents the number of years of creditable service that accrued during the existence of the community (here, 18 years, 9 months, 26 days), and the denominator of which represents the yet-undetermined total years of creditable service. Sims directs that this fraction representing the community interest in the pension be multiplied by one-half to determine the nonemployee spouse's share of the retirement benefits. The employee spouse also receives one-half of the community fraction, as well as the full amount of the fraction representing the pre-and post-marriage years of service.
The 1989 separation judgment and the 1992 QDRO recognized Judy Withers' entitlement to a share of "each retirement check" according to the Sims formula, to be paid directly to her "at such time as any funds are paid Gerald Bruce Withers[.]"
The QDRO, but not the separation judgment, states that "all contributions" to the retirement plan made after April 5, 1989, the date the community regime ended, "[are] the separate property of [Gerald Withers] and [are] not subject to this Order."
In his petition to amend the 1992 QDRO, Withers complained the order was ambiguous and inconsistent in that it provided, in Paragraph 2, that his contributions to the plan after termination of the community would be deemed his separate property, while including his post-community years of service in the denominator of the Sims fraction used in Paragraph 3 to calculate the community interest in the plan. He asserted that the QDRO should be modified "to reflect and account for [his] pre-marital and post-divorce contributions to his pension plan."
Mrs. Withers did not testify at trial. The parties stipulated that when Mrs. Withers sought the QDRO, she had no intention to modify the earlier agreement of the parties contained in the separation judgment to divide the retirement plan according to the Sims formula. As indicated, this formula calculates the community interest in the plan, or the "community fraction," by comparing Mr. Withers' years of service during the marriage (numerator) with his total years of service, including those accruing before and after termination of the community (denominator).
Mr. Withers has been represented by three different lawyers throughout these proceedings. The parties stipulated that his first lawyer, who represented him when the judgment of separation was obtained, "believed that the Sims case [gave] the appropriate formula to use to divide the [IP] retirement plan [, and that the] retirement rights earned ... after the community terminated on April 5, 1989, would be classified as Mr. Withers' separate property." (Our brackets.)
At trial, Withers testified he repeatedly asked his first lawyer "where was the end" of Mrs. Withers' interest in the retirement plan before the judgment of separation was obtained in 1989. Withers said his attorney told him, "her part ends ... [as of] April 5, 1989, and the rest of it is [yours]."
As mentioned earlier, the judgment of separation merely applies the Sims formula to the IP retirement plan. The 1992 QDRO uses the identical formula for dividing the plan, while adding, for the first time, the statement that "all contributions [after April 5, 1989, are] the separate property of [Mr. *532 Withers] and [are] not subject to this Order." (Our brackets.)
Withers said that when he was served with Mrs. Withers' motion to obtain the QDRO in 1992, he acted on the advice of his second lawyer and did not appear to contest the order because he thought it incorporated his earlier understanding of how the retirement pay was to be divided.
In the present action to amend the QDRO, Mr. Withers complains that the Sims formula, which takes into account his total years of service with IP to calculate the community's fractional interest in the plan, is contrary to the statement elsewhere in the order that all contributions after termination of the community are his separate property.
The trial court correctly found no inconsistency between Sims and the QDRO, noting that the Sims formula expressly recognizes that the portion of a retirement plan attributable to the years of service worked before or after the marriage is the employee spouse's separate property. For instance, if the potential retiree's total credited years is 30, ten of which were during the existence of the community regime, the "community fraction" is 10/30, one-half of which belongs to the spouse of the retiree. If the potential retiree works for another ten years after the community is terminated, the "community fraction" becomes 10/40, a lesser fraction than 10/30. Consequentially, the retiree receives a greater part of the retirement benefits if he or she works additional years after the community terminates, 30/40 + ½ of 10/40 of retirement pay being greater than 20/30 + ½ of 10/30 of retirement pay.
The more critical factual issue arises from Withers' effort to invoke Hare v. Hodgins, supra, to have his ex-wife's part of his eventual retirement pay based solely on what he was earning when the community terminated in 1989. Resolution of this issue turns on the nature of the increase in his wages since that time.
The IP records classify the reason for each raise as "merit." Withers, however, described his raises as "standard" and admitted they were "probably" less than the rate of inflation. None of the raises resulted from a promotion, as Withers has held his current position of woodyard supervisor since 1982. According to the IP records, each of the four raises Withers received from 1989-1994 was "comparable" to the raises given other supervisory employees.
The trial court found that Withers failed to prove his raises resulted from meritorious individual effort or achievement, as distinguished from ordinary nonpersonal factors such as longevity or inflation. Based on this factual finding, the court correctly concluded modification of the Sims formula in the QDRO was not warranted under Hare.

CALCULATION OF RESPECTIVE COMMUNITY AND SEPARATE INTERESTS UNDER SIMS

The inconsistency perceived by Withers with respect to the QDRO's treatment of his contributions to the retirement plan after termination of the community stems from his focusing on only one component of the Sims equation: the "community fraction" (Years of service during the marriage divided by Total years of service). When the Sims equation is viewed in its entirety, however, and when the proportionate shares of the litigants in the retirement plan are calculated and compared for the year when the community was terminated, on the one hand, and for future years, on the other, it becomes readily apparent that Mrs. Withers' share of the retirement benefits will decrease, and Mr. Withers' share will increase, as Mr. Withers accrues additional years of service after termination of the community.
When the community was terminated on April 5, 1989, Mr. Withers had worked for IP for some 33 years, since February 28, 1956. He accrued about 14 years of service before the marriage, which occurred on June 10, 1970, and roughly 19 years during the marriage. According to the Sims formula, the community interest in the retirement plan when the community was terminated is expressed by the fraction 19/33, or about 57 percent, with the remaining interest, 14/33, or about 43 percent, being classified as Mr. Withers' separate property.
*533 In 1989, the then-community interest in the plan was greater than Mr. Withers' separate interest (57 percent v. 43 percent), reflecting that he had, at that time, earned more years of service during the marriage than he did before the marriage. In addition to his 43 percent separate interest in the plan, however, Mr. Withers owned half of the community's 57 percent interest, or an additional 28.5 percent, for a total of 71.5 percent, compared with Mrs. Withers' 28.5 percent representing her half of the community interest.
By the time of trial on June 30, 1994, about five years after the community terminated, Mr. Withers had worked for IP for about 38 years, half during the marriage and half either before (14 years) or after (5 years) the marriage. The community interest and Mr. Withers' separate interest were evenly split at 50 percent each, with Mr. Withers' total interest, separate and community, equaling 75 percent, slightly more than it was in 1989, and Mrs. Withers' interest amounting to 25 percent, slightly less than her interest as of 1989.
We shall assume solely for purposes of illustration that Mr. Withers will retire on March 1, 1998, at age 60, with 42 years of service: 19 during the marriage and 23 before (14) or after (9) the marriage. The community interest, 19/42, or about 45 percent, will then be less than his separate interest of 23/42, or about 55 percent. The combination of Mr. Withers' separate and community interests will equal about 77.5 percent, while Mrs. Withers' half of the community interest will be only about 22.5 percent.
The numerator of the community fraction in the QDRO is fixed at 18 years, 9 months, 26 days. When the denominator of the fraction increases, by virtue of Mr. Withers' continued service with IP after termination of the community, the community interest in the retirement plan decreases.
We agree with the trial court's conclusion that
... the statement in paragraph two of the [QDRO] that all contributions to the pension plan after the date of the termination of the community are the separate property of Mr. Withers is consistent with the Sims formula provided in paragraph 3.

EXCEPTION TO SIMS FORMULA UNDER HARE

The parties here elected to use a "fixed percentage" method to apportion the unmatured IP retirement benefits, allowing Mrs. Withers to receive a share of "each retirement check ... at such time as any funds are paid" to Mr. Withers. They did not use, nor does Mr. Withers now advocate use of, the "present value" method, by which Mrs. Withers would have received a lump sum payment representing the value of her interest in the future benefits, discounted for such contingencies as Mr. Withers' death before retirement, the probability of his continued employment, and his retirement life expectancy. See discussion and comparison of the two methods in Hare v. Hodgins, cited supra, 586 So.2d at 124.
When the fixed percentage method is used, the formula for dividing the retirement benefits may be determined before the benefits become payable, notwithstanding that the retirement fund is not actually divided or partitioned until benefits are paid upon the employee spouse's retirement. Hare, at p. 125. The parties thus continue to be co-owners of the community interest in the plan pending the employee spouse's retirement. As such, they will generally share equally in any appreciation in value of the community interest in the plan that may occur after the community terminates, such as when the dollar amount of the eventual retirement benefit increases due to investment returns on the contributions made to the fund during the marriage, or to post-community pay raises based on nonpersonal factors such as cost-of-living increases or length of time with the company. Hare, at pp. 127-128.
The rationale for generally allowing the nonemployee spouse to share in any post-community appreciation of the fund's value, and an exception to the general rule, were recognized in Hare:
... the services rendered by the nonemployee spouse to the community during the early, low paid years of the employee spouse's employment provide the foundation *534 for the post-divorce escalation of pension benefits and thereby usually justify applying the [Sims] community fraction to the entire pension benefit including any increases after divorce. In other words, a brick at the bottom of a wall may be more important to its stability than quite a few near the top.
Nevertheless, there will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings....
... The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions.... On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises,... and investment returns, the community should participate in that gain....
... Because the employee spouse is generally in a position of superior knowledge and is attempting to prove the unusual or unlikely case, the burden of going forward with evidence and of persuasion on the issue properly should be assigned to the employee spouse.... [C]ases of doubt should be resolved in favor of the community and against the employee spouse's separate estate ...
586 So.2d at 127-128; citations omitted. Our emphasis and brackets.
Based on Mr. Withers' evidence concerning his post-community pay raises, which we have summarized supra, we cannot say the trial court was clearly wrong in finding that he failed to prove his entitlement to modification of the Sims formula under Hare. See and compare Webber v. Berry, 609 So.2d 1175 (La.App.2d Cir.1992); Killgore v. Killgore, 25,673 (La.App.2d Cir. 3/30/94), 635 So.2d 483; and McCown v. McCown, 93-899 (La.App. 3d Cir. 3/2/94), 634 So.2d 1249.

CONCLUSION
Turning to Mrs. Withers' claim for frivolous appeal damages, we again look to Hare:
The general rules for the partition of community property ... do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after.... [T]he emerging jurisprudential precepts [for modifying the Sims formula] are not yet well defined[.]
586 So.2d at 123, 128. (Our brackets).
Although we do not find merit in Mr. Withers' arguments on appeal, we are unable to conclude that the appeal clearly fails to present a substantial legal question, or that it was obviously taken solely for delay or without counsel's good faith belief in the view of the law advocated on Mr. Withers' behalf. See and compare Howard v. Howard, 580 So.2d 696 (La.App.2d Cir.1991).

DECREE
The judgment of the trial court is affirmed, at appellant's cost. Appellee's claim for frivolous appeal damages is denied.
AFFIRMED.