722 So.2d 1129 (1998)
Charles E. SCHLOSSER, Jr.
v.
Verna Mary Simon BEHAN.
No. 98-CA-280
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1998.
Robert G. Creely, Gretna, Louisiana, Jana E. Smith, Metairie, Louisiana and Gail D. Schlosser, Jefferson, Louisiana, for plaintiffappellee.
Sandra S. Salley, Metairie, Louisiana, for defendant-appellant.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and JAMES L. CANNELLA.
GAUDIN, Judge.
This is an appeal by Verna Behan, former wife of appellee, Charles E. Schlosser Jr., from a judgment of the 24th Judicial District Court which (1) set Ms. Behan's one-half interest in Schlosser's pension in accord with the method presented in Hare v. Hodgins, 586 So.2d 118 (La.1991), and (2) ruled that Ms. Behan was not entitled to funds in Schlosser's Deferred Retirement Option Plan (DROP).
Ms. Behan argues that both rulings were erroneous. She also contends on appeal that payments to her should have started as soon as Schlosser officially retired by entering DROP.
We affirm, finding that the district court judgment was supported by testimony, evidence and this state's jurisprudence.
Schlosser and Ms. Behan were married on February 16th, 1968 and divorced on August 17th, 1976. One month before the marriage, Schlosser had started employment as a New *1130 Orleans police officer. He was a patrolmen assigned to the detective bureau when the parties were divorced in 1976.
Subsequent to the divorce and after Schlosser was suspended in 1979 without pay for 30 days because of an altercation with another policeman, he became a much more dedicated police officer. He successfully completed an advance training course and became a sergeant in 1985 and a lieutenant in 1989. He entered DROP in 1993 and left police department employment in 1996.
Shortly after retiring, Ms. Behan appeared from what Schlosser calls his "distant past," seeking her legal interest in community property. Under Louisiana law, Ms. Behan has a right to part of Schlosser's pension. See T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975); and Sims v. Sims, 358 So.2d 919 (La.1978). In Sims, a formula was established to determine the non-employee's share of the retirement benefit, taking into account the value of the pension earned, the number of years the community existed and the number of years the employee worked in order to earn the pension. The employee's spouse is entitled to one half of this community asset.
Under Hare, which modified Sims, if a retired employee earns a pension right partly during the existence of a community and partly thereafter, as is the case with Schlosser and his former wife, the employee can receive more than his or her Sims one-half share if the retirement benefit contains substantial increment ascribable to his or her personal effort or achievement after termination of the community. In Hare v. Hodgins, at page 123 the Louisiana Supreme Court stated:
"The general rules for the partition of community property, however, do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after. In such cases, the pension benefits are composed of the separate property interest of the employee spouse in addition to the community interest. Furthermore, there is no custom from which rules can be derived for each particular situation. Accordingly, in the present case and others a court is bound to proceed and decide equitably to some extent, making resort to justice, reason and prevailing usages."
Schlosser worked 25.56 years with the NOPD. His marriage to Ms. Behan lasted eight and a half years. The CPA who testified calculated Ms. Behan's one-half Sims interest in Schlosser's $2,702.41 pension at $449.34, the value of the Schlosser-Ms. Behan community interest in the pension being $898.69.
Using the Hare v. Hodgins formula, the only CPA who testified in the instant case, Terry Jacobson, set Ms. Behan's interest in the pension at $275.68, later amended to $314.00 to include Ms. Behan's share of Schlosser's supplemental pay. Jacobson's calculations were neither questioned nor put at issue.
The record contains ample evidence of Schlosser's enhanced efforts after 1976, including Ms. Behan's testimony. She said that during her marriage to Schlosser and after he joined the detective bureau, he seemed "satisfied with that, making that his career." She said that he showed no interest in being promoted further.
Schlosser said that he had no motivation to advance until returning to the police force after his suspension in 1979. Later promotions were due to meritorious individual effort and were definitely not related to seniority or longevity, according to the testimony of Chief Warren Woodfork and other NOPD executives and witnesses.
Major Felix Loicano testified that he selected Schlosser for the Special Operations Mounted Unit, an elite group, because of his "merit, ability and skills." Major Loicano said that Schlosser was not picked because of seniority or years of service.
Under Hare, Schlosser had to prove that the elevated increment was not due to nonpersonal factors, such as cost of living raises, but came about because of his exceptional service and accomplishments. He met this burden. In fact, one of Schlosser's salary *1131 increases, a five per cent raise for mounted officers doing hazardous duty, was because of his instigation.
A number of commendation letters and awards, all dated after 1976 except one that is undated, are also part of the record.
Ms. Behan argues that Schlosser's post-1976 advances were normal and that he received the same regular promotions as other police officers with a similar number of years as a police officer. Woodfork's testimony refutes this contention, as does other testimony and evidence. Woodfork stated that routine promotions were not the ordinary course of a police officer's career. Promotions, Woodfork said, took extraordinary individual effort. The trial judge's use of the Hare formulary is supported by the record.
Schlosser qualified for and entered the deferred retirement option plan in 1993. He continued working thereafter for the NOPD while a monthly retirement benefit was deposited in an account for him. The trial judge, in his "Reasons for Judgment," said this:
"Participation in the DROP is the employee's voluntary choice. Participation in the DROP is a deferment of an employee's retirement and his monthly retirement benefits. Upon retirement, the employee may choose to remain on the job for an additional three (3) years and defer his retirement and his monthly pension benefit until he physically leaves the job at the expiration of the DROP.
"The amount of monthly retirement benefits is based upon the number of years of service before the employee enters into the Drop and is calculated at that time. However, the employee receives no monthly retirement benefit during his years of service while participating in the DROP. His retirement benefits are deferred ...
"Mr. Schlosser retired at 25.6 years on August 8,1993. He then entered the DROP, deferred his retirement and continued to work under the DROP for three (3) years. During his participation in the DROP his monthly retirement checks were deferred. Mr. Schlosser received his first monthly retirement check on June 1, 1996 after completing participation in the DROP.
"The DROP benefit earned by Mr. Schlosser was not part of his retirement package which yields the monthly retirement benefit, but a separate and voluntary program offered to senior members of the department and solely earned by Mr. Schlosser during his three (3) years in the DROP, having nothing to do with the monthly retirement benefits earned by him through the Municipal Police Officers Pension Plan.
"Because of the unique character of the DROP and the prior communal situation, it was incumbent upon this Court to proceed equitably. This Court found after trial of the matter that not only was a substantial post-community increase in the monthly retirement benefit due to personal meritorious efforts and achievements accomplished by Mr. Schlosser, but also that the funds received as a result of the DROP were solely due to singular personal decisions and efforts by Mr. Schlosser long after the termination of the prior community.
"The benefits of the DROP have little or no relationship with the prior community which terminated on August, 1976. The DROP came into existence by legislative statute in 1987, more than ten (10) years after the termination of the community. Moreover, Mr. Schlosser did not begin participation in the DROP until August 8, 1993, seventeen (17) years after the termination of the community ..."
Primarily because Schlosser did not enter the DROP program until 17 years after termination of the community he shared with Ms. Behan, we cannot say the trial judge erred in excluding Ms. Behan from these benefits. This time element distinguished the instant case from Bailey v. Bailey, 708 So.2d 354 (La.1998), in which a community existed during part of the time the employee was in DROP.
We also see no error in not requiring Schlosser to pay Ms. Behan until he actually begun collecting pension checks in 1996.
AFFIRMED.