796 So.2d 170 (2001)
Lillian Sue BULLOCK, Plaintiff-Appellant,
v.
Benjamin Franklin OWENS, Defendant-Appellee.
No. 35,078-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
Byron D. Kitchens, West Monroe, Counsel for Appellant.
James A. Hobbs, West Monroe, Counsel for Appellee.
Before WILLIAMS, GASKINS, & KOSTELKA, JJ.
GASKINS, Judge.
The plaintiff, Lillian Sueanne Bullock, appeals a trial court judgment finding that her former husband, Benjamin Franklin *171 Owens, is entitled to a portion of the proceeds of her state retirement income attributable to her participation in the Deferred Retirement Option Plan (DROP). For the following reasons, we affirm.

FACTS
Ms. Bullock began work for the State of Louisiana in September 1963 when she was 18 years old. After more than 14 years of service, on August 18, 1977, she married Mr. Owens, who was also a state employee. On March 6, 1990, a divorce judgment was entered retroactive to September 29, 1988. On August 7, 1990, the parties entered into an agreement dividing the community. On August 8, 1990, the agreement was formalized in a Qualified Domestic Relations Order (QDRO), entered by the trial court, partitioning their former community property. Under that order, each party conveyed to the other a one-half interest in their respective accounts with the Louisiana State Employees' Retirement System (LASERS), accruing from August 18, 1977 to September 29, 1988. In September 1994, Ms. Bullock enrolled in the DROP program.[1] In September 1997, Ms. Bullock retired, with 34 years of service to the state.
On January 16, 1998, Ms. Bullock filed a petition for partition and for declaratory judgment. She sought a declaratory judgment finding that her DROP funds were her separate property and not subject to division with Mr. Owens. On November 17, 2000, the defendant filed an exception of res judicata, urging that all matters regarding the parties' retirement benefits were decided by the partition and the present suit is an attempt to relitigate those issues.
Trial on the matter was held on November 17, 2000. The defendant argued that by participating in the DROP program, Ms. Bullock continued working beyond her 30-year retirement date and her retirement benefits, including the defendant's share, were placed into the DROP account for three years. When Ms. Bullock retired, she received a regular retirement check and a second check representing the DROP funds. Mr. Owens received his portion of the regular retirement, according to the community property partition. The trial court signed a judgment in favor of Mr. Owens, without assigning reasons, finding that the defendant was also entitled to a portion of the DROP funds. Ms. Bullock appealed.

DROP FUNDS
The plaintiff argues that the trial court erred in finding that the DROP account was former community property and erred in its application of the formula in Sims v. Sims, 358 So.2d 919 (La.1978), to the account. This argument is without merit.
Under Sims v. Sims, supra, the supreme court found that a party has an interest in a former spouse's pension funds or rights when they become actually payable to or for the former spouse, in the proportion that they are attributable to the former spouse's employment during the community. The court also set forth the formula to determine a party's entitlement *172 to a former spouse's retirement benefits. The formula directs that the community interest in an unmatured retirement plan be expressed by a fraction, the numerator of which represents the number of years of creditable service that accrued during the existence of the community and the denominator of which represents the total years of creditable service. Sims directs that this fraction representing the community interest in the pension be multiplied by one-half to determine the non-employee spouse's share of the retirement benefits. The employee spouse also receives one-half of the community fraction, as well as the full amount of the fraction representing the pre- and post-marriage years of service. See also Withers v. Withers, 27,348 (La.App.2d Cir.9/27/95), 661 So.2d 529.
In Hare v. Hodgins, 586 So.2d 118 (La. 1991), the supreme court recognized that a rigid application of the Sims formula may not be equitable in all cases. The court stated that the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. Hare v. Hodgins, supra.
In Hare, the court found that because the employee spouse is generally in a position of superior knowledge and is attempting to prove the unusual or unlikely case, the burden of going forward with evidence and of persuasion on this issue properly should be assigned to the employee spouse. The court stated as follows:
First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements. Moreover, since the employee spouse has the burden of production of the evidence and persuasion, cases of doubt should be resolved in favor of the community and against the employee spouse's separate estate or subsequent marital community.
The issue of whether DROP funds are part of retirement benefits and apportionable under community property settlements is presently the subject of some debate in this state. There is a split among the circuits in resolution of the issue. In Bailey v. Bailey, supra, the supreme court was called upon to partition community property following a divorce. The husband had been a state employee. The parties were married when he entered the DROP program, but they separated before he completed his participation. The issue in the case was whether the spouse of a state employee in the DROP program is entitled to any portion of the DROP account that is attributable to funds credited by LASERS after the termination of the community. The wife argued that the entirety of the DROP account is a retirement benefit attributable to her former husband's employment prior to or during the existence of the community and that she is entitled to her Sims formula percentage of the entirety of the DROP account.
The supreme court agreed with the wife, reasoning that the employment and retirement contributions that gave rise to the husband's right to have the funds credited to the DROP account occurred prior to and during the existence of the community and not after the termination. It followed *173 then that the right to receive funds in the DROP account, at least the portion attributable to Mr. Bailey's labor and efforts and retirement contributions during the existence of the community prior to entering the DROP program, constituted a community asset. The court found that if the husband had actually retired on the date he entered the DROP program, his wife would clearly have the right to share, in the stipulated percentage, in the retirement benefits he would have received. According to the court, the fact that the same amount of monthly retirement benefits was credited to a deferred-receipt account under a fictitious retirement for a specific temporary period should not change that result. Therefore, the entire DROP account was subject to division between the spouses under the Sims formula.
The plaintiff urges the application of Schlosser v. Behan, 98-280 (La.App. 5th Cir.11/25/98), 722 So.2d 1129, writ denied, 98-3165 (La.3/26/99), 739 So.2d 791. In Schlosser, the fifth circuit affirmed a trial court ruling finding that the divorced wife was not entitled to share in the former husband's DROP fund. The husband began working for the New Orleans Police Department one month before the parties were married. They were married in February 1968 and divorced August 1976. He entered the DROP program in 1993 and retired in 1996. He worked more than 25 years with the police department prior to entering into the DROP program. He was married only 8½ years. The fifth circuit found that, primarily because the husband did not enter the DROP program until 17 years after termination of the community, the wife was precluded from receiving a portion of the former husband's DROP benefits. The court found that the long period of time the parties had been divorced distinguished the case from Bailey v. Bailey, supra, in which the community existed during part of the time the employee was in DROP.
The reasoning of Schlosser has been criticized in Kenneth Rigby, Matrimonial Regimes: Recent Developments, 60 La. L.Rev. 405 (2000). The article found that the decision in Bailey was correct:
The fact that the community existed during part of the time Mr. Bailey was in DROP does not affect either the classification of the retirement benefits or the apportionment of them. The retirement benefits deposited to Mr. Bailey's DROP account as well as the retirement benefits subsequently received by him, were fully earned and their amount was fixed, as was both the community portion of them and Mrs. Bailey's portion of them, as of the date of Mr. Bailey's retirement. His subsequent participation in the DROP program did not affect any of these facts.
The article states that the Schlosser court was erroneous in finding a distinction between the facts of that case and those in Bailey. The commentator also contends that the fifth circuit erred in finding that Mr. Schlosser's DROP benefits were solely earned during the three-year participation in DROP. The article opines that the retirement benefits deposited to DROP for Mr. Schlosser were wholly earned prior to his retirement and were not earned during his participation in DROP.
The third and fourth circuits have embraced the reasoning of Bailey and have refused to follow and apply Schlosser. In Sullivan v. Sullivan, 01-0006 (La.App. 3d Cir.6/13/01), ___ So.2d ___, the parties were married in 1964 and divorced in 1988. Mr. Sullivan was a participant in the Teachers' Retirement System of Louisiana. Pursuant to the community property partition in 1990, each party received an *174 interest in any retirement plan, annuity or lump sum payment paid to either party in accordance with the Sims formula. In 1995, when Mr. Sullivan became eligible to retire, he enrolled in DROP. In 1998, Ms. Sullivan filed suit to receive her portion of the DROP funds under Bailey. Mr. Sullivan urged application of Schlosser to declare the DROP funds to be his separate property. The third circuit rejected the reasoning of Schlosser and found Bailey applicable. The court concluded that the fact that the employee did not enter the DROP program until several years after termination of the community did not matter. The court in Sullivan found as follows:
Accordingly, we conclude that the funds deposited into Mr. Sullivan's DROP account are directly attributable to Mr. Sullivan's employment and retirement contributions prior to the termination of the community and, thus, are part of his retirement benefits. That Mr. Sullivan was not eligible to participate in the DROP program until after termination of the community, does not negate the fact that the DROP funds are derived from the retirement benefits which accrued during the pendency of the marriage. [Citations omitted.] Had Mr. Sullivan chosen not to participate in DROP and retired on the date he first became eligible, Ms. Sullivan would have been entitled to receive thirty-one percent of the retirement benefits payable to Mr. Sullivan. We find here, as the supreme court held in Bailey, that the fact that Mr. Sullivan chose to continue working while having the monthly retirement benefits diverted into a DROP account does not diminish Ms. Sullivan's right to a portion of those benefits.
In Zalfen v. Albright, XXXX-XXXX (La. App. 4th Cir.7/18/01), 791 So.2d 800, the parties were married in 1963, legally separated in 1976 and divorced in 1977. In 1987, the former community property was partitioned. Pursuant to the formula in Sims, the wife was found to be entitled to one-half of the pension attributable to the existence of the community. In 1995, Mr. Albright enrolled in DROP. The Municipal Police Employees' Retirement System found that the DROP funds were subject to distribution according to the 1987 partition judgment. Mr. Albright filed suit seeking a judgment that the DROP funds were his separate property, not subject to partition under the Sims formula. He urged application of the reasoning in Schlosser and Ms. Zalfen urged application of Bailey. The fourth circuit followed Bailey and rejected Schlosser:
We do not agree with the conclusions reached by our colleagues on the Fifth Circuit in the Schlosser v. Behan case, and therefore, we decline to follow that decision. Specifically, we do not agree with the Schlosser court's holding that the Bailey case is distinguishable and not controlling in a situation where a former spouse's entry into the DROP program occurred after the termination of the community. Even though the Bailey case involved funds deposited into the DROP program both during the community and after the termination of the community, the fact remains that the Supreme Court determined that funds deposited to DROP after the termination of the community were community property subject to partitioning in accordance with the Sims formula.
In her argument to this court, the plaintiff in the present case contends that, because Ms. Bullock did not enter the DROP program until after the termination of the community, the reasoning of Schlosser is applicable instead of that in Bailey. Among the distinguishing factors cited by the plaintiff are the fact that there was no community when she entered into DROP, *175 that the parties in the present case were not married as long as the parties in the Bailey case and that this court should apply the equity principles for partitioning retirement benefits announced in Hare v. Hodgins, supra. According to the plaintiff, her marriage to Mr. Owens did not benefit her career. Her duties at home were not lessened because of the marriage. Therefore, Mr. Owens is not entitled to share in her DROP benefits. The plaintiff also makes an argument that, had she known that Mr. Owens would have a claim for a portion of her DROP benefits, she would have retired at 30 years service and obtained another job whereby she could have accumulated a new retirement in which he would have no claim to participate.
We choose to follow the reasoning of Bailey, Sullivan, and Zalfen and reject the reasoning of Schlosser. When, in the present case, Ms. Bullock chose to participate in DROP, the funds paid into that account were retirement benefits, not her earnings after the termination of the community. Mr. Owens was entitled to a portion of those funds under the QDRO which partitioned their community property, according to the formula in Sims. To deny Mr. Owens' entitlement to a portion of the DROP proceeds would preclude him from recovering his share of his former wife's retirement benefits for a period of three years. He was clearly entitled to these benefits under order of the court. Therefore, we find that Mr. Owens is entitled to his proportionate share of the DROP funds attributable to Ms. Bullock's work during the existence of the community.
We also reject Ms. Bullock's argument that the trial court erred in applying the Sims formula in the apportionment of the DROP funds, urging us to apply the equitable principles of Hare v. Hodgins, supra. Under the authorities cited above, the fact that the community terminated prior to Ms. Bullock's enrollment in DROP is not controlling. Also, the fact that the parties in the present case were not married as long as those in Bailey is of no moment. As required by Hare, in order to distribute the DROP funds under principles of equity, Ms. Bullock was required to prove that the DROP funds were attributable to her individual effort, education, or achievement after the termination of the community. She has not carried that burden of proof and has not shown that application of the Sims formula would be inequitable.

COMMUNITY PROPERTY SETTLEMENT
In her second assignment of error, the plaintiff argues that the very wording of the community property settlement vests her with ownership of the DROP funds regardless of its classification as separate or community property. The plaintiff contends that the partition specifies that she retained all benefits not conveyed to Mr. Owens and because the DROP program did not exist at that time, those funds paid into the account were not conveyed in the agreement. The plaintiff argues that the partition conveyed only regular retirement benefits. These arguments are without merit.
The parties entered into an agreement to partition their former community on August 7, 1990. Pursuant to that agreement, Ms. Bullock conveyed to Mr. Owens one-half of any and all benefits accrued to her in the LASERS from August 18, 1977 through September 29, 1988, to be paid upon her retirement and pursuant to the regulations of that plan. The QDRO, incorporating the agreement of the parties was, entered by the court on August 8, 1990 and provided as follows:

*176 It is further ordered, that pursuant to the community property settlement entered into between the parties, ... BENJAMIN FRANKLIN OWENS (as Alternate Payee) is entitled to receive one-half of any and all benefits accrued to LILLIAN ANN BULLOCK in the Louisiana Employees' Retirement System from August 18, 1977 through September 29, 1988. The amounts due the Alternate Payee shall be payable in any of the forms available under the terms of the Plan and shall be payable at such times as provided in the Plan, upon request of the Alternate Payee.
Edna Eddie Dimaio, a retirement benefits manager with LASERS, testified that the DROP funds are not considered a separate retirement plan, but as part of the retirement due to Ms. Bullock.
We concluded above that the DROP funds were part of Ms. Bullock's retirement benefits. They were not a separate, unclassified, undivided asset excluded from the community property partition. Under the terms of the community property settlement and the QDRO, Ms. Bullock unequivocally transferred to Mr. Owens a one-half interest in her retirement fund attributable to her years of service during the existence of the community. Under the terms of the agreement, Mr. Owens is entitled to his proportional share of Ms. Bullock's DROP funds. The trial court did not err in so holding.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment finding that the defendant, Benjamin Franklin Owens, is entitled to his proportional share of the DROP funds of the plaintiff, Lillian Sueanne Bullock, pursuant to the agreement of division of their former community property. All costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] Upon reaching the service time qualifications for retirement, a state employee may choose to participate in DROP for up to three years. Under that scheme, his status changes to that of a retiree; however, he continues working at his state job and earns wages. His monthly retirement benefits are paid into an account which accrues interest. Upon retirement, the employee may receive the money in a lump sum or in a series of payments over time. No service credit is accumulated for the calculation of eventual monthly retirement benefits for the years the employee continues to work while in the DROP plan. See La. R.S. 11:447-451; Bailey v. Bailey, 97-1178 (La.2/6/98), 708 So.2d 354.