

FILED

May 30 2025, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Jackie L. Bowen,

*Appellant-Petitioner*

v.

Mark J. Bowen,

*Appellee-Respondent*

---

May 30, 2025

Court of Appeals Case No.
24A-DN-1655

Appeal from the Hamilton Superior Court

The Honorable David K. Najjar, Judge

Trial Court Cause No.
29D05-1701-DN-65

---

**Opinion by Judge Vaidik**
Judges Bailey and DeBoer concur.

**Vaidik, Judge.**

## Case Summary

[1] This case involves a Deferred Retirement Option Plan (DROP). Under these plans, which are common for state and local employees, an employee nearing retirement agrees to keep working, and the employer agrees to pay the employee both salary and retirement benefits. The retirement benefits, which consist of the monthly pension the employee would have received had they retired, are designated each month for the employee's benefit. At the end of the DROP period, which is typically 12-60 months, the employee retires, receives the amount that accrued, and also begins receiving their regular monthly pension.

[2] Although the Indiana General Assembly authorized DROPs for police officers and firefighters in 2003, this is the first case to address DROPs and whether the pension payments that accrue during the DROP period are marital property subject to division in a divorce case. We hold, consistent with nearly every jurisdiction that has addressed these plans, that the pension payments that accrue during the DROP period constitute divisible marital property to the extent they were earned during the marriage.

## Facts and Procedural History

[3] Mark J. Bowen ("Husband") began working for the Hamilton County Sheriff's Department in 1991. The following year, Husband and Jackie L. Bowen ("Wife") married. In January 2017, after nearly 25 years of marriage, Wife filed

for divorce. Thereafter, the parties entered into a settlement agreement. Section 2.3(a) of the agreement addresses Husband's Hamilton County Police Pension, which Husband was vested in when Wife filed for divorce:

> After Husband begins drawing his Hamilton County Police Pension benefits, Husband shall pay to Wife 50% of the accrued benefit earned during the marriage valued as of January 4, 2017, net of all taxes. The accrued benefit earned during the marriage as of . . . January 4, 2017 is $6,208.78. Wife shall receive 50% of the coverture portion of Husband's pension net of all taxes. Wife shall not receive COLA increases or other adjustments to the pension benefit after January 4, 2017.

Appellant's App. Vol. II p. 20. Thus, Wife's 50% portion of Husband's pension was set at $3,104.39 per month (before taxes). In November 2017, the trial court entered an order adopting the settlement agreement and dissolving the parties' marriage.

[4] In September 2020, Husband, who was 53 years old and still working for the Hamilton County Sheriff's Department, elected to participate in Hamilton County's DROP, which is a part of his Hamilton County Police Pension benefits. *See* Ex. p. 10. As a general matter,

> Upon election of DROP benefits, the employee agrees to keep working past retirement, and the employer agrees to pay the employee both salary and retirement benefits. The retirement benefits are placed into a special account, however, which the employee cannot access until after actual final retirement. The purpose for this arrangement, obviously, is to encourage employees to defer retirement and to provide additional years of service to the employer.

2 Brett R. Turner, Equitable Distribution of Property § 6:25 (4th ed. 2024); *see also* John E. Sanchez & Robert D. Klausner, State and Local Government Employment Liability § 13:13 (Nov. 2024 update).

[5] The Indiana General Assembly made DROPs available to police officers and firefighters in 2003 and excise, gaming, and conservation officers in 2008. *See* INPRS, About the DROP, https://www.in.gov/inprs/my-fund/police-firefighters/about-the-drop/ [https://perma.cc/P5WV-AKMU]. Indiana Code section 36-8-10-12.2 applies to counties that adopt a DROP as part of their retirement plan. According to Section 36-8-10-12.2(e), an employee who "is not yet credited with the maximum number of years of service" and "is eligible to receive an unreduced benefit immediately upon termination of employment" "may elect to enter a DROP." The election is irrevocable. Ind. Code § 36-8-10-12.2(e). According to Husband, in order to participate in Hamilton County's DROP, the employee must be at least 52 years old with 20 years of service. *See* Tr. p. 15. The DROP period is typically 12-60 months (Hamilton County's is 36 months, *see* Ex. p. 10), but it can't extend past the date that the employee is credited with the maximum years of service. *See* I.C. § 36-8-10-12.2(f); INPRS, *supra*.

[6] The DROP benefit is calculated "as if the employee had retired on the date the DROP period begins." INPRS, *supra*. In other words, creditable service stops accruing, and the final monthly benefit amount is calculated. *See* 21 Brett R. Turner, Equitable Distribution Journal 49 (May 2004); *see also* Sanchez & Klausner, § 13:13 ("The benefit is calculated using credited service earned as of

the DROP date."); Ex. p. 10 (Hamilton County DROP materials explaining that the employee doesn't get service or salary increases during the DROP period). The final monthly benefit amount is called the "DROP frozen benefit," which is the

> monthly pension benefit calculated under the provisions of a retirement plan established under this chapter based on the employee beneficiary's:
>
> > (1) salary; and
> >
> > (2) years of service;
>
> on the date the employee beneficiary enters the DROP.

I.C. § 36-8-10-12.2(c).

[7] The employee "continue[s] employment in his/her current status for the DROP period." INPRS, *supra*. "During this time, the DROP benefit is accrued." *Id.* The employee cannot access the DROP funds during this time. *See* Ex. p. 10. If the employee becomes disabled during the DROP period, the benefits are calculated as if the employee had never entered the DROP. *See* I.C. § 36-8-10-12.2(j); Ex. p. 10. Similarly, if the employee dies less than 12 months after entering the DROP, the benefits are calculated as if the employee had never entered the DROP. *See* INPRS, *supra*. However, if the employee dies at least 12 months after entering the DROP, the death benefits include the DROP frozen benefit multiplied by the number of months in the DROP. *See id.*

[8] When the employee exits the DROP and retires on the their DROP retirement date, the employee may choose between two options: (1) a lump-sum/installment payment of the amount that accrued during the DROP period **and** a monthly pension calculated on salary and service at the time the member entered the DROP or (2) a monthly pension calculated on salary and service at the time the member exited the DROP, with no lump-sum or installment amount. INPRS, *supra*; *see also* I.C. § 36-8-10-12.2(g), (h).

[9] Here, Husband's DROP period began on October 1, 2020. At that time, his DROP frozen benefit was calculated to be $7,998.14 per month. *See* Ex. p. 14. Each month, that amount was designated for Husband's benefit, earning 3% interest.[1] Husband's DROP period ended 36 months later, on September 22, 2023, when he reached the maximum years of service under Hamilton County's plan (32 years). At that time, $301,456.32 had accrued. Husband selected Option 1 and rolled the full amount into an IRA. *See id.* At the same time, Husband started receiving his monthly pension,[2] giving $3,104.39 ($2,227 after

---

[1] Wife claims that $7,998.14 was put into Husband's "DROP account" each month. Appellant's Br. p. 9. Husband, however, says there is nothing in the record to support Wife's claim that "an alternate account was created when Husband entered DROP, nor that such fictional account was funded in any way until *after* Husband retired in September 2023." Appellee's Br. p. 16. While there is no evidence in the record that a DROP "account" was created for Husband, there is no dispute that the amount that accrued during the 36-month DROP period was tracked. *See* Ex. p. 28.

[2] Although Husband's monthly pension was $7,998.14, he chose a payment option called "Life Income with 10 Years Certain." Ex. p. 14. This option lowers his monthly payment to $7,675.80 but has no effect on the amount Wife receives.

taxes, *see* Tr. p. 23) of it to Wife each month according to the terms of their settlement agreement.

[10] Upon learning about Husband's DROP in September 2023, Wife told him that she was entitled to a share of it under Section 2.3(a) of the settlement agreement. Husband did not agree, so in January 2024 Wife filed a motion for rule to show cause in the divorce case. Specifically, Wife alleged that Husband was "in contempt of Section 2.3(a) of the Agreement as Husband[] has willfully and wrongfully withheld Pension benefits to which Wife is entitled" and asked the trial court for an order requiring him to pay her $115,110.78, which represents $3,104.39 per month for the 36-month DROP period plus 3% interest. Appellant's App. Vol. II p. 37; Ex. p. 36. She also requested attorney's fees and costs "incurred as a result of Husband's noncompliance with the terms of the Agreement." Appellant's App. Vol. II p. 38. A hearing was held, following which the trial court denied Wife's motion, concluding that the DROP benefits are not marital property and therefore Husband was not in contempt for not giving Wife a share.

[11] Wife now appeals.

## Discussion and Decision

[12] This case comes to us as a denial of Wife's motion for rule to show cause, which alleged that Husband was in contempt for willfully and wrongfully withholding pension benefits. But before we address whether Husband was in contempt, we must decide the legal issue presented, that is, whether Wife is

entitled to a portion of Husband's DROP benefits under Section 2.3(a) of the parties' settlement agreement. This presents an issue of law, which we review de novo. *See Ferrill v. Ferrill*, 143 N.E.3d 350, 355 (Ind. Ct. App. 2020) ("A divorce settlement agreement is a contract that we interpret like any other, meaning we will apply a *de novo* standard of review to the trial court's interpretation.").

[13] Although our legislature authorized DROPs for police officers and firefighters in 2003, this is the first Indiana case to address the plans. Because DROPs "result in the accumulation of a significant amount of capital," they have "proved a fertile field for domestic disputes." Sanchez & Klausner, § 13:13; *see also id.* at 13:17, 13:21 (noting that the popularity of DROPs "has inevitably led to marital property questions concerning DROP assets"). As a result, "a significant body of case law has been developed regarding its status as marital property." *Id.* at 13:13. As Wife points out, a "strong general rule" from these cases has emerged:

> Because a DROP program defers only *receipt* of prior benefits, the strong general rule is that a DROP election does not change the classification of the employee's existing retirement benefits. Stated differently, **the lump sum received at the end of the deferral period** is not in any way compensation for the additional service provided. It is compensation for the employee's total service with the company, and it **is marital property to the extent that the total service was performed during the marriage**.

2 Turner, *supra* (emphases added); *see also* 21 Turner, *supra* ("Because DROP programs fundamentally permit the employee to delay receipt of retirement benefits already earned, the strong general rule is that retirement benefits paid into a DROP account are given exactly the same classification that they would have received if the DROP program had not been elected.").

[14] Wife directs us to seventeen decisions where appellate courts in other states have held that DROP accounts that contain pension benefits that accrued during the marriage constitute divisible marital property. *See* Appellant's Reply Br. pp. 4, 8-9. In one of those cases, *Killingsworth v. Killingsworth*, 925 So. 2d 977 (Ala. Civ. App. 2005), the husband filed for divorce in July 2003. At that time, he had a vested pension through the State of Alabama. In December 2003, while the divorce was still pending, the husband turned 55 and became eligible to retire and receive his pension. Instead, in January 2004 he elected to participate in Alabama's DROP. The wife requested 50% of the amount to be accumulated in the husband's DROP account, but the trial court awarded her only 30%.

[15] The husband appealed, arguing that "the award to the wife of a portion of [his] retirement benefits that will accumulate in his DROP account was in error because those benefits, according to the husband, were not vested at the time the divorce action was filed." *Id.* at 982. The Alabama Court of Appeals explained that the husband's "argument misapprehends the nature of DROP benefits. DROP is not a separate retirement program; rather, it is an option made available to certain state employees whose benefits have in fact already

vested and who are eligible for immediate retirement." *Id.* The court further

explained:

> The monthly retirement benefits to be accumulated in the
> husband's DROP account are the benefits that had already
> accrued during his employment with the state before the filing of
> the divorce action, and they are not different in character from
> retirement benefits paid directly to a retired employee. An
> employee merely continues to earn his or her regular salary while
> his or her retirement benefits accumulate in a DROP account.
> Accordingly, at the conclusion of the required term of service, the
> husband will receive, on a deferred basis, the retirement benefits
> that he earned during the course of his marriage, and that he
> could have begun receiving in January 2004 but for his election
> to participate in DROP. The trial court therefore did not err in
> awarding to the wife a portion of those retirement benefits.

*Id.* (footnote omitted); *see also Baggs v. Baggs*, 385 P.3d 68, 76 (Okla. 2016)

("Other courts have unanimously determined, under similar DROP systems to

Oklahoma's, that a spouse is entitled to a portion of that part of their ex-

spouse's retirement benefits which are attributable to the marital estate, even if

the ex-spouse elects the retirement option deferred plan after the divorce.");

*Cardarelli v. Cardarelli*, 350 So. 3d 766, 768 (Fla. Dist. Ct. App. 2022) (holding

that "a spouse who is awarded a portion of the other spouse's . . . pension at the

time of the dissolution judgment is entitled to an equivalent share in a [DROP]

account . . . even when the DROP account is created after the dissolution

became final"); *Pulliam v. Pulliam*, 114 A.3d 242, 254 (Md. Ct. Spec. App. 2015)

(noting that years of service during marriage contributes to eligibility to

participate in DROP and that DROP benefits are subject to division even if not

elected until after divorce); 2 Turner, *supra*, n.52 (collecting cases). The rule to emerge from these cases is that the pension payments that accumulate during the DROP period constitute divisible marital property to the extent they were earned during the marriage, even if the DROP was not elected until after the divorce.[3]

[16] It is against this backdrop that we review Section 2.3(a) of the parties' settlement agreement, which provides:

> **After Husband begins drawing his Hamilton County Police Pension benefits**, Husband shall pay to Wife 50% of the accrued benefit earned during the marriage valued as of January 4, 2017, net of all taxes. The accrued benefit earned during the marriage as of . . . January 4, 2017 is $6,208.78. Wife shall receive 50% of the coverture portion of Husband's pension net of all taxes. Wife shall not receive COLA increases or other adjustments to the pension benefit after January 4, 2017.

Appellant's App. Vol. II p. 20 (emphasis added). Wife argues that Husband began "drawing" his pension benefits on October 1, 2020, when his DROP period started. She notes that at that point, his monthly pension of $7,998.14 was designated each month for his benefit. Husband, however, argues that he didn't begin "drawing" his pension benefits until his DROP period ended on

---

[3] Husband notes that there is one Louisiana case, *Schlosser v. Behan*, 722 So. 2d 1129 (La. Ct. App. 1998), which held that because the husband did not elect a DROP until 17 years after the divorce, the wife wasn't entitled to any of the DROP benefits. But as one treatise has acknowledged, there has been "a barrage of criticism" against *Schlosser*. *See* 2 Turner, *supra*, n.52. Indeed, as Wife notes, multiple Louisiana cases have refused to follow it. *See, e.g.*, *Bullock v. Owens*, 796 So. 2d 170 (La. Ct. App. 2001).

September 22, 2023. He notes that until that time, he was neither entitled to nor had access to the DROP funds. While this is true, it doesn't change the fact that Husband's monthly pension of $7,998.14 (of which Wife was entitled to $3,104.39 per month) accrued for 36 months. Although certain events, such as disability or death, could have disqualified him from receiving the DROP funds, that didn't happen. As a result, at the end of the DROP period, Husband received a lump sum of $301,456.32. We agree with Wife that Husband began "drawing" his pension benefits on October 1, 2020.

[17] Husband asserts that since he did not elect the DROP until three years after the divorce, his DROP benefits were not vested when Wife filed for divorce, meaning that the pension payments that accrued during the DROP period are not marital property subject to division. *See In re Marriage of Nickels*, 834 N.E.2d 1091, 1097 (Ind. Ct. App. 2005) ("Thus, in order for pension benefits to be included as marital property, the benefits must not be forfeited at the termination of employment or the benefits must be vested and payable either before or after the dissolution."). But Husband's argument that his DROP benefits were not vested when Wife filed for divorce "misapprehends the nature of DROP benefits." *Killingsworth*, 925 So. 2d at 982. Husband's DROP is not a separate program; rather, it is part of his police pension, which had already vested when Wife filed for divorce. *See Cummings v. Sasnett*, 565 P.3d 339, 344 (Okla. 2025) (explaining that a DROP "is not a separate retirement program" but rather an "alternative option" made available when employees "have vested

and are eligible for retirement").[4] Indeed, Husband's DROP materials provide that the DROP is part of his police pension:

> I will participate in the DROP in accordance with all the terms and conditions set forth in the Hamilton County Police Retirement Plan (referred to as "Plan"). The Plan is a part of this irrevocable election to enter the DROP.

Ex. p. 10. The fact that Husband did not elect to participate in the DROP until after the divorce doesn't mean that the pension benefits lost their character as marital property. *See Cummings*, 565 P.3d at 344 ("The pension benefits do not lose their character as vested marital benefits simply because they are moved to a [DROP] account."). As such, the pension payments that accrued during Husband's DROP period constitute marital property to the extent they were earned during the marriage. And as already explained above, Wife's portion of Husband's pension is $3,104.39 per month (before taxes). Wife is thus entitled to $115,110.78, which represents $3,104.39 per month for the 36-month DROP period plus 3% interest.

---

[4] Husband cites cases involving "enhanced pensions." In one of those cases, *Granzow v. Granzow*, 855 N.E.2d 680 (Ind. Ct. App. 2006), the husband was entitled to an enhancement to his pension upon completing thirty years of service with his employer. After the divorce petition was filed, the husband reached thirty years of service. The wife claimed she was entitled to a portion of the enhancement. We held that the wife was not entitled to a portion because the husband's entitlement "did not accrue incrementally but vested in its entirety after" the divorce petition was filed. *Id.* at 684. Thus, it was not marital property. But as explained above, the features of a DROP are different than the features of an enhanced pension. Thus, these cases do not control.

Husband also highlights the following language in Section 2.3(a): "Wife shall not receive COLA increases or other adjustments to the pension benefit after January 4, 2017." This does not apply to Husband's DROP, as it is neither a COLA nor an "adjustment"; rather, it is part of Husband's police pension.

[18] But this doesn't mean Husband is in contempt, as Wife claims. Generally, a person who "willfully" disobeys any order lawfully issued by any court of record or by the proper officer of the court is guilty of indirect contempt. *See* I.C. § 34-47-3-1; *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). To be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Id.* "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Id.* Here, as already explained, this is the first Indiana case to address DROPs and whether the pension payments that accrue during the DROP period are marital property subject to division. Since there was no Indiana law on this issue when Wife requested a portion of Husband's DROP in September 2023, the issue was not clear, meaning Husband did not willfully disobey Section 2.3(a) of the settlement agreement. Thus, while we reverse the trial court's determination that Husband's DROP benefits are not marital property, we affirm the court's determination that Husband is not in contempt. We remand to the trial court for further proceedings consistent with this opinion.

[19] Affirmed in part, reversed in part, and remanded.

Bailey, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Maggie L. Smith
Darren Craig
Frost Brown Todd LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Nancy L. Cross
Brandon C. Elkins-Barkley
Cross Glazier Reed Burroughs, P.C.
Carmel, Indiana